## MAYOR AND ALDERMEN OF WETUMPKA
### *vs.* WINTER.

[ACTION ON PENAL BOND GIVEN IN CONSIDERATION OF BONDS EXECUTED BY
MUNICIPAL CORPORATION.]

1. *Words of statute how construed.*—The words of a statute are to be understood in their popular signification, when nothing appears to the contrary.
2. *Meaning of words in statute judicially known.*—The courts must judicially know the meaning of the phrase, "internal improvements," as used in a statute authorizing a municipal corporation to make and sell bonds, and to appropriate the money arising from the sale "for any purpose of internal improvement for the benefit of its citizens."
3. *Validity of contract of municipal corporation under special statutory powers.*—A municipal corporation may be authorized by statute to subscribe for stock in a plank-road company ; and the contract of the corporation, made pursuant to the terms of the statute, is binding on it.
4. *Averment that bonds were sold at par.*—An averment that the corporation subscribed for stock in a plank-road company to the amount of $15,000, and that the defendant, in consideration of its bonds for that amount, assumed the liability created by said subscription, is, in effect, an averment that the bonds were sold at par.
5. *Construction of acts of 1848 and 1850 amending charter of Wetumpka, and validity of bonds in aid of Central Plank-road Company.*—Under the acts of 1848 and 1850 (Session Acts 1848, p. 223 ; *Ib.* 1849-50, p. 348) amending the charter of the city of Wetumpka, as the same are set out in the complaint in this case, the corporation was authorized to dispose of its bonds in aid of the Tallassee branch of the Central Plank-road Company ; the "supervision and direction," which are enjoined on the mayor and aldermen, relate only to the appropriation of the money arising from the sale of the bonds, and not to the performance of the work ; and if the bonds were transferred to a purchaser, in consideration of his assuming the corporation's liability for stock subscribed to the amount of the bonds, the contingent advantage which the purchaser might obtain, from the fact that the stock might be called in by installments, does not render the contract usurious or illegal.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

THE complaint in this case was in these words :—

"The mayor and aldermen of the city of Wetumpka, plaintiffs, *vs.* John G. Winter, defendant. The plaintiffs claim of the defendant the sum of thirty thousand dollars, for the breach of the con-

dition of a bond made by the defendant heretofore, to-wit, on the — day of July, A. D. 1851, payable to the plaintiffs, styling them 'the mayor and aldermen of the city of Wetumpka,' and their successors in office, in the sum of thirty thousand dollars; which bond having been destroyed by accident, the said plaintiffs are unable to produce the same; and which bond was and is subject to a condition thereunder written, whereby,—after reciting that whereas the defendant had that day undertaken and agreed to advance for the plaintiffs, by the name of the city of Wetumpka, the sum of fifteen thousand dollars through the Bank of St. Marys, (it being the amount of stock subscribed for by said plaintiffs in the Tallassee branch of the Central Plank-road Company,) in consideration of which the plaintiffs had that day sold to the said defendant the bonds of the said plaintiffs, amounting to fifteen thousand dollars, payable five years after date thereof, —the condition of said bond was declared to be such, that if said defendant should pay, or cause to be paid, the several installments on the aforesaid stock or subscription, as the said plank-road company (meaning the Tallassee branch of the Central Plank-road Company) should require the same to be paid in, then the said bond to be void, else to remain in full force.

And the plaintiffs say that, by an act of the general assembly of the State of Alabama, approved February 29, 1848, it was enacted as follows: *Section* 1. 'That the mayor and aldermen of the city of Wetumpka be authorized to issue bonds, under the corporate seal of said city; to be signed by the mayor and treasurer; to be issued in sums of not less than one hundred dollars; to bear such rate of interest, not exceeding eight per cent. per annum, and to be redeemed at such times, and upon such terms, as shall be expressed in each of said bonds. No bonds shall be issued, but upon the entire concurrence of the board of the mayor and aldermen, upon a full attendance of all the members of the board, and when there is no vacancy; which shall be made manifest only by an entry of the order for issuing being made on the minutes of said board, and being signed by each member thereof; nor shall any contract, amounting to one hundred dollars, made under any of the provisions of this act, be valid,

which is not made under all the restrictions in this section recited.' *Section* 2. ' That when said corporation desire to raise money for the purposes hereinafter expressed, the treasurer shall sell said bonds at par value, and the money arising from such sales shall be held and used alone for the purpose of securing the right of way, and constructing a canal around the lower end of the shoals of the Coosa river, commencing at such point above Wetumpka as may 'be considered most advantageous ; also, in erecting locks, and such other works for machinery, as may be considered necessary for securing, controlling, and disposing of the water power, for the pur-pose of propelling machinery of any and every description, under such rules and regulations, upon such terms, and to such persons, as may be considered most conducive to the advancement of manufactories, and most for the prosperity of Wetumpka.' And by an act of the said general assembly, approved February 1, 1850, it was enacted, that the amount of bonds, issued under the provisions of the first section of said act, may be extended to one hundred thousand dollars, and the money arising from the sale of said bonds may be appropriated, under the supervision and direction of the mayor and aldermen of Wetumpka, for any purpose of internal improvement for the benefit of the citizens of Wetumpka.

" And the plaintiffs further say, that upon an entire concurrence of the board of mayor and aldermen, upon a full attendance of all the members of said board, and at a time when there was no vacancy in said board, the order was made for issuing said bonds, and entered on the minutes of said board, and signed by each member thereof. No bond was in a less sum than one hundred dollars, and the rate of interest did not exceed eight per cent. The said plaintiffs, on ——, under their corporate seal, and signed by the mayor and treasurer, made their said bonds, and the treasurer sold and delivered said bonds to said defendant, amounting to fifteen thousand dollars ; and the said defendant agreed therefor to pay the several installments on the stock, or subscription, of the said plaintiffs to the Tallassee branch of the Central Plank-road Company, amounting to fifteen thousand dollars, as the said plank-road company should require the same to be paid in. The Tallassee branch of the Central

Plank-road Company is a work of internal improvement, and judged and intended to be for the benefit of the citizens of Wetumpka : it runs from near the city of Wetumpka, eastwardly, towards Tallassee.

" And the plaintiffs say, that the condition of said bond has been broken by the defendant, in this : 1. That said defendant has not paid, or caused to be paid, the several installments on the said stock, or subscription, nor any part thereof, although the said Tallassee branch of the Central Plank-road Company has long since required all the said stock, or subscription of fifteen thousand dollars, to be paid ; of all which defendant had due notice.

" 2. And in this : That the defendant has not paid, or caused to be paid, the said several installments, amounting to fifteen thousand dollars, or any or either of them, or any part thereof, although the said Tallassee branch of the Central Plank-road Company did require ten per cent. on said stock, or subscription, to be paid in on the first day of July, 1851, and fifteen per cent. on the first day of August, 1851, and other fifteen per cent. on the first day of September, 1851, and other ten per cent. on the first day of October, 1851, and other fifteen per cent. on the first day of April, 1852, and other fifteen per cent. on the first day of May, 1852, and other ten per cent. on the first day of July, 1852, and of all the remainder of said stock, or subscription, not previously paid, amounting to (to-wit) ten per cent. on said stock, to be paid in on the first day of August, 1852 ; and afterwards, to-wit, on the day last aforesaid, defendant was required to pay the same, at, to-wit, at the Bank of St. Marys ; of all which defendant had due notice.

" 3. And in this : That although the defendant paid the first six installments, amounting to eighty per cent., he hath not paid, or caused to be paid, an installment of ten per cent., amounting to fifteen hundred dollars, which said Tallassee branch of the Central Plank-road Company required to be paid on the 15th day of July, 1852 ; nor the installment of the remainder of said stock of other ten per cent., amounting to other fifteen hundred dollars, which said branch of said company required to be paid in on the first day of August,

1852, nor either or any part thereof; of all which defendant had due notice.

"4. And in this : That said defendant has not paid, or caused to be paid, an installment of ten per cent. on said stock of fifteen thousand dollars, amounting to fifteen hundred dollars, which the said Tallassee branch of said plank-road company, on the 15th day of July, 1852, required to be paid; nor the other installment of the remainder of said stock, not previously paid in, being ten per cent. on the remainder of said stock, amounting to other fifteen hundred dollars, which said branch of said plank-road company, on the first day of August, 1852, required to be paid in, nor any or either, or any part thereof, although required so to do by demand afterwards, on the first day of August, 1852, at the Bank of St. Marys aforesaid ; of all which defendant had due notice.

"5. And in this : That said defendant hath not paid, or caused to be paid, the said several installments, or any or either of them, or any part thereof, although said Tallassee branch of said plank-road company did require ten per cent. of the said stock to be paid on the first day of July, 1851, and fifteen per cent. on said stock to be paid on the first Monday in August, 1851, and another fifteen per cent. on the first Monday in September, 1851, and another installment of ten per cent. on the first Monday in October, 1851, and another installment of ten per cent. on the first Monday in November, 1851, and did require fifty per cent. on said stock to be paid by or before the first day of January, 1852, and the further sum of ten per cent. by the first day of February, 1852, and on the 7th day of August, 1852, the treasurer of said company was directed to call in the balance of the stock, except from those stockholders east of the river, (meaning the Tallapoosa river ;) and the plaintiffs were not east, but west of the river ; and thereupon the treasurer, afterwards, to-wit, on the — day of August, 1852, did call upon, request and require the plaintiffs to pay all their stock not before that time paid ; of all which said defendant then and there had notice.

"Yet the said defendant, though often requested, hath not," &c.

The statutes above referred to may be found in the Session Acts of 1848 and 1849–50, on pages 223 and 348.

The defendant demurred to the complaint, 1st, " because it shows no right of recovery against him" ; 2d, " because the bonds issued by plaintiffs, the alleged consideration of defendant's bond, were issued by them without any legal authority therefor"; 3d, " because the bonds issued by plaintiffs are not shown to have been issued by them in accordance with any provision of their charter" ; and, 4th, " because said complaint does not show that any demand was ever made of the Bank of St. Marys for the installments of stock to said plank-road company."

The court sustained the demurrer, and its ruling in that behalf is the only matter now assigned as error.

F. Bugbee, for the appellants.—1. The plaintiffs are a public, or municipal corporation, which has for its object the government, in part, of a portion of the State. Municipal corporations are very ancient, and, in some instances, have exercised sovereign powers.—Angell and Ames, § 4, and cases cited. It would seem, therefore, that when such corporations were afterwards created by patent or enactment, the creation must have had some reference to the powers previously possessed by similar corporations. The power of a municipal corporation extends to the employment of all those means and appliances, which may be calculated to develop the resources of the State, and to add to the aggregate wealth and prosperity of its citizens.—Stein v. Mayor of Mobile, 24 Ala. 591 ; Baldwin's C. C. R. 222 ; 6 Pick. 427 ; 3 Selden, 214 ; 11 Vermont, 482 ; Carthew, 482 ; Bacon's Abr., " Corporation," D ; Angell and Ames, 24, 200.

2. Independent of the general powers of corporations, the plaintiffs rely on the express provisions of the acts of 1848 and 1850. The former act contemplates the creation of hydraulic power, but the work is to be done by canal, " commencing at such point *above* Wetumpka as may be considered most advantageous." *Above* does not mean *in* or *at*, but *beyond*, and consequently *outside* of Wetumpka ; and so far outside as may be considered advantageous by the corporate authorities, whose sound discretion is not limited. Under

the act of 1850, " the money arising from the sale of said bonds may be appropriated, under the supervision and direction of the mayor and aldermen, for any purpose of internal improvement, for the benefit of the, citizens of Wetumpka." The mayor and aldermen, as a corporation aggregate, are incapable of action, except in their aggregate capacity. Their actions are expressed by vote, and may operate in one place as well as another. If they have money in New York, its appropriation is directed by vote. All information is derived from oral communications by members, or written communications by others. Matters outside of the corporation are directed and executed as easily as matters within ; the execution being always by agent. The " supervision" contemplated by the act applies only to the appropriation ; and the appropriation is only limited by the qualification annexed as to its purposes—" any purpose of internal improvement." Before the passage of the act, the corporation had all the general and necessary powers incident to such corporations ; such as the power to expend money in the improvement of its streets, to open roads, &c. The act was designed to confer additional powers ; and the phrase, " internal improvements," is obviously used in its ordinary signification.

3. That the act was done without authority, is not always a defense.—Bates & Hines v. Bank, 2 Ala. 451 ; Branch Bank v. Crocheron, 5 Ala. 250. " If such corporation set up a store for the sale of merchandize, and sell such merchandize, it does not lie in the mouth of a purchaser, in an action for the price of goods sold him, to object that they were prohibited by law to carry on such trade."—Chester Glass & Co. v. Dewey, 16 Mass. 94. Much less, it would seem, could he object, where there was no prohibition, but a mere want of authority ; and especially where he retains the goods, or other supposed security given. There is a difference between acts prohibited and acts done without authority : the latter may be approved, ratified, or adopted, but the former cannot ; the latter may not be opposed to public policy, while the former always are. In the case of Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558, the guards thrown around the company were not for their benefit, but for the public security, and for the protection of the insured ; and hence the dealing described

might have endangered the funds of the company, and thus been opposed to public policy ; but that Smith should have been permitted, on any other grounds, to retain the securities, and yet avoid his contract, does not seem just or equitable. 8 Ala. 828 ; 1 Rich. 281, 118.

4. An injury to one, or a benefit to the other, is a sufficient consideration.—Chitty on Contracts, 26–33, note 2 ; 7 Ad. & El. 25 ; 2 P. & D. 477 ; 3 ib. 452. If a contract is deliberately made, with full knowledge of all the circumstances, the least consideration will support it.—Train v. Gold, 5 Pick. 384. Bonds, notes, &c., when foundation of action, import consideration.—Clay's Digest, 340, § 152 ; 1 Stew. & P. 28 ; 4 Porter, 515 ; 7 ib. 62, 420. One partner agrees to pay one half of money previously lost in an illegal transaction ; held to pay on his express promise, although there was no legal consideration.—4 Burr. 2069 ; 3 Term R. 418.

WATTS, JUDGE & JACKSON, contra.—1. A corporation can only exercise such powers as are specifically granted, or such as are necessary to carry into effect those granted.—Angell & Ames, 232–45, and authorities there cited ; The State v. Russell & Stebbins, 1 Stew. 299. In the State v. Mayor &c. of Mobile, 5 Porter, 279, it was held, that a municipal corporation would not be authorized to exercise the right of appropriating streets, or to narrow or widen them, unless expressly vested with such power by its charter, or in carrying out an incident to such express delegation. In Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558, the bonds issued by the company were held to be void, because not issued by some authority given in the charter ; and the bonds and mortgage of an individual, taken in exchange for the bonds of the corporation, were held to be likewise void,—forming no ground of recovery.

It is clear, therefore, that the bonds of the city of Wetumpka, which were loaned to Winter, were void, and formed no consideration for the bond sued on, unless the issue of such bonds is authorized by the charter of the city, or by some special act of the legislature. It will not be pretended that the ordinary powers of the city corporation gave any such right ; but the right is supposed to be conferred by the acts of 1848 and 1850. The act of 1848 authorized the issue of fifty

thousand dollars in bonds,—to be sold at par value, and the proceeds to be held and used alone for the purpose of securing the right of way, and constructing a canal around the lower end of the shoals of the Coosa river ; and in erecting locks, and such other works for machinery, as may be necessary for securing, controlling, and disposing of the water power, &c. It needs no argument to show that this act does not give the power to issue the bonds which were sold to Winter.  The act of 1850 is an amendment of the act of 1848 ; authorizes the amount of bonds to be increased to one hundred thousand ; and provides, that the money arising from the sale of said bonds may be appropriated, under the direction and supervision of the mayor and aldermen of Wetumpka, for any purpose of internal improvement, for the benefit of the citizens of Wetumpka.  This act authorized the bonds to be sold for money, and nothing else.   The *money* must be appropriated : they had no right to loan the bonds for any object to which they had no right to appropriate the money.   It must be appropriated under the supervision and direction of the officers named ; and they had, therefore, no right to appropriate it for any object, over which they had no power to take supervision and direction.  The supervision and direction—the control—of the mayor and aldermen of Wetumpka, does not extend beyond the corporate limits of the city ; while the plank-road was beyond the limits of the city.  Taking the whole act together, it is obvious that the "internal improvement" spoken of, must mean improvement within the corporate limits of Wetumpka.  Any other construction would give the mayor and aldermen a discretionary power to appropriate the money to digging a canal around the Muscle shoals, or building a railroad across the Sand mountain.  There is no averment in the declaration that the bonds were sold at par, as required by the act of 1848.  The bonds themselves, not the money arising from their sale, were loaned to Winter.— See the cases cited *supra ;* also, East Anglian Railways Co. v. Eastern Counties Railway Co., 7 English Law and Equity, 508.

2. The declaration does not aver a demand of the St. Marys Bank for the payment of the different installments.  By the terms of the contract, as alleged, that bank was to pay

the money ; and the demand, therefore, must be made of the bank, and must be so averred. The allegations on this point are not sufficient.

STONE, J.—If " the money arising from the sale of said bonds [was] appropriated, under the supervision and direction of the mayor and aldermen of Wetumpka, to purposes of internal improvement, for the benefit of the citizens of Wetumpka," there cannot be any question of the validity of the bond sued on, so far as the facts are disclosed by this record. The entire inquiry depends on the construction of the expression, " *internal improvements*," as found in the act amending the act incorporating the city of Wetumpka, approved February 1, 1850.—Pamphlet Acts, 348.

The phrase, " internal improvements," has, in our political dialect, a variable signification, dependent on the agency by which the work is performed. Internal improvements by the Federal government comprehend all works of that description within the territorial limits of the United States. Internal improvements by State authority are, of necessity, those improvements which are within the boundaries of the State.

It is contended that, inasmuch as the powers of municipal corporations are conferred for their well-being, and generally are confined to police and sanitary regulations within the chartered limits of such corporations, the proper construction of these words is, *internal*, or within the city of Wetumpka. We cannot assent to the correctness of this argument. The words of a statute, if nothing appear to the contrary, should be so construed and understood, as to give them their popular signification.—Favers v. Glass, 22 Ala. 621. No case can be found, it is apprehended, where the improvements of the streets, alleys, markets, &c., of a city or town, have been classed as internal improvements. On the other hand, when internal improvements by or under State authority are spoken of, it is universally understood, that works within the State, by which the public are supposed to be benefited, are intended ; such as the improvement of the highways and channels of travel and commerce.

Again, the history of our State for the last ten years has made every one familiar with the many railroad and plank-

road enterprises, projected, and in some instances completed, under the supervision of joint-stock companies. This court must judicially know the meaning of this expression.—Salomon v. The State, 28 Ala. 83 ; Stephen v. State, 11 Geo. 225 ; Floyd v. Ricks, 14 Ark. 286.

We have no hesitation in declaring, that the act in question was intended, both by the legislature and the city authorities of Wetumpka, to authorize, and did authorize the latter, to pledge its credit, and thereby raise means to aid in the construction of some work of the description above indicated, as a means of improving the commerce of that city, and thereby benefiting its citizens.

We have recently had occasion to consider the powers of municipal corporations.—See *Ex parte* Burnett, at this term. In that case we held, that the legislature might confer on a municipal corporation larger powers than would be implied from the general purposes of their creation. We hold that, when the legislature, in express terms, authorizes cities or towns to subscribe for stock in an enterprise, such as that mentioned in the pleadings in this cause, the contract of such city or town, made pursuant to the act, is binding upon it.

The *supervision* and *direction*, which the act of February 1, 1850, enjoins on the mayor and aldermen of Wetumpka, relates expressly to the *appropriation* of the money arising from the sale of the bonds, and has no reference to the performance of the work.

Without determining in this case whether it was necessary to the sufficiency of the declaration that it should aver the bonds were sold at par, we think that fact is sufficiently averred. The declaration, in effect, states that the mayor and aldermen of Wetumpka had subscribed for stock in the Tallassee branch of the plank-road, to the amount of fifteen thousand dollars ; and that, in consideration of the bonds of the city for fifteen thousand dollars, the defendant assumed the liability created by said subscription. The bonds were then sold at par. It may be objected that, inasmuch as the subscription to the plank-road would be payable only when, and as fast as, the board of directors might make calls on the stockholders, the defendant in this way obtained the bonds at less than their par value. The answer to this objection is

found in the fact, that the calls might be made at once, so far as we are informed ; and this advantage in interest was rather the accident, than a substantive feature of the contract. We are satisfied that such contingent advantage did not render the contract usurious or illegal.

It results from what we have said, that the circuit court erred in its judgment on the demurrer. Its judgment is therefore reversed, and the cause remanded.