23 So.2d 505

OPINION OF JUSTICES.

No. 69.

Supreme Court of Alabama.

Oct. 13, 1945.

The Honorable Chief Justice and
Associate Justices of the Supreme
Court of Alabama
Judicial Department
Montgomery 4, Alabama

Gentlemen:

Important constitutional questions have arisen in connection with Act No. 281, Senate Bill No. 1, approved July 9, 1945, Regular Session of the Legislature, 1945, which act creates a corporation known as the Alabama Public Hunting and Forestry Association, Inc.

Pursuant to Title 13, Section 34, Code of Alabama, 1940, I request your written opinion as to the following constitutional questions:

1. Would the incorporation of the Alabama Public Hunting and Forestry Association, Inc., authorized to be created by the above mentioned act, and the performance of the duties imposed upon the corporation in said act, be engaging the State in works of internal improvement in violation of Section 93 of the Constitution of 1901?

2. The title or preamble of said act provides that there shall be appropriated to said corporation from the general funds of the State the sum of $50,000 for the fiscal year beginning October 1, 1945, and a like sum for the fiscal year beginning October 1, 1946. In Section 13 of said act there is contained an appropriation of $300,000 conditioned upon the approval of the Governor. Does this variance between the title of the act and Section 13 of the body thereof violate Section 45 of the Constitution of 1901?

3. If your answer to question No. 2 is in the negative, and the condition of the treasury will permit, may I, as Governor, legally authorize the State Comptroller to draw his warrant in the sum of $300,000 payable to said corporation?

For your convenience I herewith enclose copy of said Senate Bill No. 1, together with the legislative history of the adoption of said act.

Respectfully submitted
Chauncey Sparks
Governor of Alabama

Honorable Chauncey Sparks,
Governor of Alabama,
State Capitol,
Montgomery, Alabama.

Dear Sir:

We acknowledge receipt of your communication of September 24, 1945, in which you request our written opinion on certain constitutional questions in connection with Act No. 281, Senate Bill 1, Regular Session of the Legislature, 1945, approved July 9, 1945, which Act creates a corporation known as The Alabama Public Hunting and Forestry Association, Incorporated.

In reply we wish to advise that in our opinion: (1) The incorporation of The Alabama Public Hunting and Forestry Association, Incorporated, authorized to be created by the above mentioned Act, and the performance of the duties imposed upon the corporation in said Act, is not engaging the State in works of internal improvement in violation of § 93 of the Constitution of 1901; (2) the variance between the amount of the appropriation to the corporation as stated in the title of the Act and the amount of the appropriation to the corporation as stated in the body of the Act, referred to in your letter, does not violate § 45 of the Constitution of 1901, except as to the excess of the amount stated in the body of the Act over the total amount stated in the title; (3) if the condition of the State Treasury will permit, you, as Governor, may legally authorize the State Comptroller to draw his warrant in the sum of $50,000, payable to the said corporation, for the fiscal year beginning October 1, 1945, and his warrant for a like sum payable to the said corporation for the fiscal year beginning October 1, 1946.

■■ It is axiomatic that the Legislature has all powers of legislation not limited by the Federal or State Constitution. It is also well established that it is the duty of the court to indulge every reasonable presumption in favor of the validity of the Acts of the Legislature. State v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283; In re Opinion of the Justices, ante, p. 66, 22 So.2d 521.

■■ Briefly stated, the purpose of the Act under consideration is to promote the health, comfort, safety and general welfare of the people of the State through the acquisition of lands within the State for hunting and fishing preserves and for the reforestation and conservation of forests. So long as the organic law is not violated, such legislative acts have been generally upheld. It is common knowledge that valuable wild life and forests would soon be exterminated if the State should fail to conserve these things and give aid to their reproduction. Krenz v. Nichols, 197 Wis. 394, 222 N.W. 300, 62 A.L.R. 466.

There will be found in Title 8, § 1 et seq., Code 1940, a group of statutes dealing in various ways with hunting, fishing and forestry. Section 172 et seq., Title 8, Code 1940, provide generally for State parks now owned or hereafter acquired and their maintenance and indicate that the purposes of such parks include, among other things, those things mentioned above. All of these statutes have been in force for a substantial period and some for a long time. We should have regard for this legislative attitude. While we will not accept the legislative construction as final, we will regard it as influential. Board of Revenue of Jefferson County et al. v. Huey et al., 195 Ala. 83, 70 So. 744.

Upon a consideration of the principles involved and the general purposes of the Act, we think that the Act in question in its general purposes is within the police power of the State. In re Opinion of the Justices, ante, p. 66, 22 So.2d 521; authorities, supra. This brings us to a consideration of the specific provisions of the Act and the question as to their violation of § 93 of the Constitution. The purpose of § 93 of the Constitution is well known and needs no restatement here. See In re Opinion of the Justices, supra.

In order to accomplish the purposes of the Act, the creation of a corporation as an arm or agency of the State is contemplated, with power to borrow money, issue bonds and make contracts. But in all such undertakings it is expressly provided that the general faith and credit of the State of Alabama shall not be pledged or any indebtedness incurred within the meaning or contrary to § 213 of the Constitution of 1901, as amended, Amend. No. 26. The plan is not violative of § 93. See Long v. Alabama Highway Corporation, 234 Ala. 142, 174 So. 41. It is true that there is no mandate from the people as there was in connection with highway improvement (see Rogers v. Garlington, 234 Ala. 13, 173 So. 372), but it is likewise true that the plan here promulgated in the interest of public health and the well-being of the people through wholesome outdoor recreation and the conservation of forestry, contemplates neither a prohibited internal improvement nor a private interest. Bird, Atty. Gen., v. Common Council of City of Detroit, 148 Mich. 71, 111 N.W. 860; Mayor and Aldermen of Wetumpka v. Winter, 29 Ala. 651. It is not the form of the plan, but its substance and purpose which is controlling.

If the establishment of markets does not violate § 93, as was held by us in Re Opinion of the Justices, ante, p. 66, 22 So.2d 521, then there is no reason why the establishment of outdoor recreational and forestry conservation preserves should be violative of § 93. Both fall within the great reserve of the police power of the State.

But it may be suggested that the Act under consideration provides such powers of sale, lease and contract generally as to violate § 93 of the Constitution. We do not interpret the Act as authorizing the State to engage in dealing in real estate or its products in any way on a competitive basis with private enterprise. On the contrary, each transaction of the corporation under the Act must be reasonably related to the expressed purposes of the corporation in the public interest and for the public good. See In re Opinion of the Justices, ante, p. 66, 22 So.2d 521.

This brings us to a consideration of § 45 of the Constitution as applied to the Act. We judicially know the legislative records of the State. Accordingly we know that there was no variance between the title and the Act in the manner referred to in your inquiry, when the Act was introduced. The variance is the result of an amendment of § 13 of the Act during passage of the Act, without corresponding change in the title of the Act. Evidently the original idea was an annual appropriation for 1945 and 1946 to take care of the situation until the Legislature could further consider the matter when it convened in 1947, while the amendment is based on an appropriation immediately payable in a lump sum and conditioned on approval of the Governor.

The foregoing situation does not aid in meeting the requirements of § 45 of the Constitution because this section of the Constitution applies to the bill when it becomes enacted into law and not to "bills upon their passage and during the consideration of the same by the Legislature." Jackson v. State, 171 Ala. 38, 55 So. 118, 119.

In the case of Fuqua v. City of Mobile, 219 Ala. 1, 2, 121 So. 696, in discussing § 45 of the Constitution, this court said: "One of the purposes of this constitutional provision was to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the

title gives no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted. Lindsay v. United States Sav. & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L.R.A. 783 * * *."

It is clearly apparent that the title of the Act which provides a total appropriation of $100,000 gives no intimation of an appropriation of $300,000, as sought to be provided in the body of the Act. Accordingly we do not consider that you are empowered to authorize the State Comptroller to draw his warrant to the corporation in the sum of $300,000.

But even though § 13 of the Act is invalid to the extent of authorizing an appropriation of $300,000, we think that § 13 of the Act so far as it appropriates $100,000, is valid. To this limited extent the title gives clear indication of the appropriation as made in the body of the Act. It is a familiar principle that if the Act is broader than the title, that part which is within both the title and the body of the Act can stand, while that part not indicated by the title will fall. This is on the idea that there remains a "law 'complete within itself, sensible, capable of being executed and wholly independent of that which is rejected.'" State v. Davis, 130 Ala. 148, 30 So. 344, 345, 89 Am.St.Rep. 23; Watson v. State, 140 Ala. 134, 37 So. 225; 50 Am.Jur. § 184, p. 163. The Act contains a clause of separability, as follows: "Section 16. If any section, paragraph, sentence, clause, provision, or portion of this Act or all or any portion of any appropriation or appropriations herein made may be held unconstitutional or invalid, it shall not affect any other sentence, paragraph, section, clause, provision, or portion of this Act or any other appropriation or appropriations or portions thereof hereby made not in and of itself unconstitutional or invalid."

This clause serves to assure us that our holding is in keeping with the intent and purpose of the Legislature, as expressed in the Act. Williams, Commissioner, etc., v. Standard Oil Co. of Louisiana, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596.

While the body of the Act provides for a lump sum appropriation conditioned upon the approval of the Governor, and the title provides for an appropriation divided into two annual payments, this does not militate against the view here taken because this is merely a restriction on that part of the appropriation which is valid.

Respectfully submitted,
Lucien D. Gardner
Arthur B. Foster
J. Ed. Livingston
Davis F. Stakely
Robert T. Simpson
Associate Justices.

To His Excellency, The Governor of Alabama,
State Capitol,
Montgomery, Alabama.

Dear Sir:

Responding to your inquiry in respect to Act No. 281 passed by the recent session of the legislature approved July 9, 1945, purporting "To provide for the organization of a public corporation known as The Alabama Public Hunting and Forestry Association, Incorporated," and asking whether or not you as governor are empowered to draw a warrant for the sum of $300,000.00, payable to the alleged corporation as authorized by Section 13 of said act, which provides as follows: "There is hereby appropriated out of the general funds of the State of Alabama the sum of Three Hundred Thousand Dollars ($300,000) conditioned upon the approval of the Governor, *which sum shall be by the treasurer placed to the credit of the corporation* formed under the provisions of this act. Said sum so appropriated shall be used by said corporation, under its general powers, in furtherance of the purposes for which it is formed. Any sum of money placed to the credit of the corporation shall be paid out of the treasury by the treasurer upon the requisition of the Board of Directors of said corporation.", I respectfully advise that in my opinion, that section does not by its terms confer on you any such power; it merely authorizes you to approve the appropriation. Furthermore, I am of the opinion that, said act was passed in violation of the Constitution of 1901.

The title of said act purports to provide for the organization of said corporation and to name the incorporators thereof and "to provide for their successors in office." The body of the act undertakes to incorporate the Governor of Alabama as such, the Attorney General of Alabama as such, and the director of finance of the state as such, as a corporation. Such attempted legislation is contrary to the very spirit of the constitution, and cannot be sus-

tained. Mitchell, Judge, v. State ex rel., 134 Ala. 392, 404–414, 32 So. 687.

The framers of the constitution and the people who adopted it never dreamed that the governor's office or the attorney general's office could ever be combined or molded into a corporation. The governor as the chief executive of the state represents and embodies "a separate body of magistracy," the head of the executive department of the state set apart for the enforcement of the law, Constitution 1901, §§ 42, 43, 120, commander-in-chief of the militia, Constitution 1901, § 131, and is disqualified from holding any other office, Constitution 1901, § 130. The attorney general is a member of the executive department (Constitution 1901, § 112), and is at the head of the legal department appointed by law to represent the state in all controversies where its interests are involved.

There is nothing in the title of the act which suggests that these high executive officers of the state are to be named in the body of the act as corporators. Therefore, the act in this respect is deceptive and does not clearly express the subject dealt with in the body of the act. It is not enough that the title be single as to the subject of legislation but that subject must be clearly expressed in the title. Constitution 1901, § 45; Lindsay v. United States Savings & Loan Ass'n et al., 120 Ala. 156, 54 So. 171, 42 L.R.A. 783; Ballentyne v. Wickersham, 75 Ala. 533; First Nat. Bank v. Hagood, 206 Ala. 308, 89 So. 497.

The title of the act is not general in its scope but is specific embodying a compendium of the provisions or purposes of the act, among others, "To provide for the appropriation from the general funds of the State of Alabama the sum of $50,000.-00 for the fiscal year beginning October 1, 1945, and a like sum for the fiscal year beginning October 1, 1946, which sum shall be placed to the credit of the corporation [By whom the title does not state], and shall be used for said corporation in the furtherance of the purposes for which it is formed."

No one reading the title or hearing it read would be advised that the act proposed to appropriate a bulk sum of $300,-000.00 "upon the approval of the Governor." The body of the act is broader than its title, and the title, therefore, does not clearly express its purpose to appropriate such sum of money, and it is, therefore, deceptive and misleading and violates Section 45 of the Constitution. First Nat. Bank v. Hagood, supra. And, as observed in First Nat. Bank of Evergreen v. Hagood, 206 Ala. 308, 309, 89 So. 497, "We cannot assume that those different words mean the same thing, for they do not (National Surety Co. v. Huntsville, 192 Ala. 82, 68 So. 373), nor can we induce conformity by assuming one meaning to pervade the title and body of the act, for we cannot know which meaning to adopt."

The utterances by the court in Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696, 697, are here pertinent. "We think it requires no argument to demonstrate that one reading such a title would not be led to suspect that the body of the act would be so far extended beyond the title as also to provide for an exclusion from the corporate limits a very large area then constituting a part thereof. * * *" To paraphrase, one reading such title could not be led to suspect that the body of the act would be so far extended beyond the title as to provide for an appropriation in the lump sum of $300,000, "on the approval of the governor," who is made the chief officer of the corporation. To the same effect and applying the same principle, see State ex rel. Bassett v. Nelson, 210 Ala. 663, 665, 98 So. 715; Mobile Dry-Docks Co. v. City of Mobile, 146 Ala. 198, 40 So. 205, 3 L.R.A.,N.S., 822, 9 Ann.Cas. 1229.

The title does not clearly express the subject in that it purports to authorize, "the organization of a public corporation known as The Alabama Public Hunting and Forestry Association, Incorporated, and to provide who shall be the incorporators and officers thereof, and to provide for their successors in office." The body of the act designates the governor, the attorney general and the director of finance as "an agency of the State of Alabama [See Section 11] to carry out the purposes of the act"; authorizes the agency to acquire and hold vast properties for internal improvement, free of taxation, and seeks to relieve the state from liability for the acts of its agency. The title and body of the act creating the Alabama State Bridge Corporation, which was sustained by an equal division of the Justices of this Court, named, "The Alabama Highway Director, the President of the State Board of Administration of Alabama, and the Chairman of the State Tax Commission of

Alabama," as such agency or corporation. See Alabama State Bridge Corporation et al. v. Smith, 217 Ala. 311, 313, 116 So. 695. This is true of the act dealt with in Long v. Alabama Highway Corporation, 234 Ala. 142, 174 So. 41, and other cases referred to by the majority. The act under consideration differs in another material aspect from the act considered in the cases cited. That act, approved in the Alabama Bridge Corporation case, authorized the construction of bridges as a part of the public highways of the state and was within the letter and spirit of the constitutional amendment of Section 93 of the Constitution, adopted by the people in 1927 as Article XXA, (Const. Amend. No. 21) authorizing the state to engage in the construction, improvement, repair and maintenance of public roads, highways and bridges. Acts 1927, p. 794.

The rule of statutory construction well settled by the authorities that where the title of the act is single and the subject is clearly expressed, if the body of the act is broader than the title and that which is alien to the title can be stricken from the body, leaving in the body a complete statute sensible, capable of being executed and wholly independent of the rejected provisions, the court may reject such cumulative provisions and uphold the act,—is not here applicable, for two reasons. As we have pointed out, the subject of the act is not clearly expressed in the title and it is essential that the body of the act, with the alien matter stricken, must be complete and sensible without writing something into the body of the act which is not there. 11 Am.Jur. 838, § 152, and Note 15; Dorchy v. Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686; Bradley v. State, 99 Ala. 177, 13 So. 415. Such interpretation would be amendatory and hence legislative, and beyond the power of the judiciary. State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am. St.Rep. 23. To so amend the body of the act would violate Section 43 of the Constitution.

Said act violates Section 93 of the Constitution as amended by Section XXA. Section 93, before its amendment, provided and still provides that, "The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such, nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation." These provisions were in no way affected by said amendment which dealt solely with roads, highways and bridges.

The act under consideration authorizes the corporation or agency, whichever it may be termed, "to acquire, hold, dispose of real estate and personal property for its corporate purposes and to receive grants, gifts, donations, and contributions of real and personal property, or any interest therein; (d) to acquire by purchase or condemnation real property for rights-of-way or easements therein necessary or convenient for its corporate purposes, and to use so long as its corporate existence shall continue; to exercise the power of condemnation in such cases only as may be necessary for the purpose of perfecting titles to lands acquired through voluntary purchase and sale; *to construct or reconstruct or maintain and operate houses, facilities, or structures or improvements of whatever nature necessary or convenient for its corporate* purposes; (e) *to sell therefrom any forest products* when in the opinion of the Director of Conservation such products are of merchantable quality or quantity and to sell or lease from said lands any mineral or oil products when in the opinion of the Board of Directors it is to the best interest of said corporation that same be leased or sold. Said corporation shall have the right to sell or exchange any of its lands for other lands when in the opinion of its Directors it is to the best interest of the Corporation so to do. However, all acquisition and maintenance of land herein referred to shall be done and performed by *the employees of the. Department of Conservation under the direction and supervision of the Department of Conservation of the State of Alabama,* and it may assign, contract or delegate the work of maintenance, control or supervision under its general powers, subject to approval by the Governor. Whenever the employees of the Department of Conservation shall be engaged in performing any services for the Corporation, the Department of Conservation shall pay the salaries and expenses of said employees from its fund and the Corporation shall reimburse the Department of Conservation for any sums so expended; (f) To make by-laws for the management and regulation of its affairs, and to promulgate rules and regulations governing the use of its lands or facilities; (g) to appoint officers, agent, and employees and fix their compensation; (h)

to make contracts and to execute all instruments necessary or convenient in carrying out the purposes for which this Corporation is organized. (i) to charge reasonable sums for the use of any land, building, structure, or other facility which it may own or operate, maintain, or supervise; (j) to borrow money and to issue bonds therefor in accordance with the provisions of this Act; *to purchase real estate* or improve such real estate and to issue bonds for the purchase price of such real estate or the cost of improvements thereon, and to pledge such real estate or improvements thereon for the payment of such bonds or purchase price or cost of construction or maintenance of improvements; (k) to do all things necessary or convenient to carry out the powers expressly given in this chapter; (1) without limitation of the foregoing, to borrow money and accept grants from the United States Government or any corporation or agency created, designated, or established by the United States, and to enter into contracts with the United States or any such corporation or agency; (m) to borrow money and to issue bonds therefor in accordance with the provisions of this Act, with rights of bondholders as hereinafter described; (n) to enter into any contract or agreement with any department, agency, or instrumentality of the State which may be deemed necessary or advisable by the corporation to aid in the construction or reconstruction or maintenance and operation of any recreational program or facility owned by such department, agency, or instrumentality of the State, including the right to use for such purpose any funds available to the corporation for the construction, improvement, or maintenance of recreational facilities located on the lands of such department, agency, or instrumentality of the State or for the maintenance of such improvements; provided, however, that any such contract authorized under the terms of this subsection shall be subject to the approval of the Governor. (o) To execute with reference to any activity, land, or improvement of this corporation a trust indenture or trust agreement for the security of bonds authorized to be issued for the purchase or improvement of land, such trust indenture or trust agreement to be in form and substance as authorized and approved by resolution duly adopted by the corporation.

"Section 6. *Sale of Products.* The Directors of the Alabama Public Hunting and Forestry Association, Incorporated, acting by and through the *Director of Conservation,* are hereby empowered to sell or lease or cause to be sold or leased on such terms as shall appear to them to be to the best interest of the Corporation, *timber, minerals, oil, gas, or other products from any of the lands owned by said corporation when in their opinion they shall deem such timber, minerals, oil, gas, or other products to be of merchantable quality and quantity.* Notice of the sale of such timber, minerals, or other products shall be first advertised once a week for two successive weeks in a newspaper published in the county where such timber, minerals, or other products are located. Said notice shall also be posted in a public place in said county. Such notice shall describe the timber as to amount and quality, and in the case of minerals or other products, so far as can be ascertained, the amount and quality of such minerals or other products, and shall call for bids for the purchase price thereof. Said notice shall further contain the date upon which said bids shall be received and the date of the sale thereof. If there are no newspapers published in the county where such sale is to be made, then said notice as hereinabove described, shall be published in a newspaper of an adjoining county. After the bids are received, as provided for under this section, the Directors of the Corporation, acting by and through the Director of Conservation, may sell said timber, minerals, or other products to the highest bidder, but if in their opinion the highest bid received is not a fair or reasonable price for such timber, minerals, or other products, they may readvertise the sale or may continue to hold such timber, minerals, or other products until a future time when they may again advertise such sale. However, sales of timber, minerals, or other products from the lands owned or controlled by this Corporation may be made by the directors thereof when the amount involved does not exceed One Thousand ($1,000.00) Dollars, and may be made without advertisement or by competitive bid."

The quoted powers and others set forth in said act, too numerous to mention, show beyond peradventure of doubt that this supposed corporation is to "engage in works of internal improvement," and lend its credit and aid to such enterprise.

If the legislature possesses the power to authorize such internal improvements as

above indicated, then it was foolish for the legislature and the people of Alabama to promulgate and adopt Article XXA of the Constitution, Amend. 21, to empower the state to engage in internal improvements in the state by the construction of roads, highways and bridges. If under the pretense of the exercise of the police power the legislature can incorporate the governor, the attorney general and the director of finance, and empower them to engage in operating a Hunting and Forestry Enterprise, it also has the power under like pretense to organize the justices of the supreme court into a hunting and forestry corporation and make the chief justice the president and the associate justices directors thereof. Such legislation while not expressly prohibited by the constitution is wholly inconsistent with the spirit and purpose of the Constitution.

Said act lays the foundation for a "junker System" in the ownership, improvement and control and enjoyment of lands and benefits therefrom by state agency without taxation, in competition with private ownership, taxed according to value, and also subject to severance tax for protection.

Said act violates Section XIV of the Constitution which protects the state by immunity from suits at law or in equity in that it authorizes the governmental agency set up by the act to be sued. State Docks Commission v. Barnes, 225 Ala. 403, 405, 143 So. 581. This immunity cannot be waived. Alabama Industrial School v. Adler et al., 144 Ala. 555, 42 So. 116, 113 Am. St.Rep. 58.

This act also violates the due process clause of the Constitution of Alabama and of the United States, in that by its terms it precludes judicial inquiry into its doings, unless the suit is filed within twenty days after publication of a prescribed notice.

The appropriation made by Section 13 is incomplete and depends upon the approval of the governor. This violates Section 72 of the Constitution. In Smith v. Speed, 50 Ala. 276, it was observed: "In the light of its history, this constitutional provision is conservative, not restrictive or prohibitory of the legislative power over the public revenue. In England, the Crown had claimed as one of its highest prerogatives the custody and disbursement of the public revenue, without amenability to the parliament. This claim had been the subject of strife and controversy between King and Commons;

and it was only after the lapse of years, that the Commons wrung from the necessities of the Crown an acknowledgment of the principles embodied in this constitutional provision. Forewarned by the history of this strife and controversy, the framers of our constitutions introduced this provision, to prohibit executive power from controlling the public purse. Story on Cons. §§ 1340–2. The provision is mandatory to the treasurer, not to pay, and to the other executive officers, not to draw public money, except in pursuance of an appropriation made by law. It devolves on the general assembly the entire responsibility for the disbursement of the public moneys, and preserves its power over them, that it may be answerable to the responsibility."

Respectfully submitted,
Joel B. Brown
Associate Justice Supreme Court of Alabama.