PARKER, Justice (dissenting).
I respectfully dissent. The sole issue on appeal is whether Jason S. Corley's action against Valerie A. Richardson, in her capacity as president of Bishop State Community College ("BSCC"), is barred by the doctrine of State immunity. See § 14, Ala. Const. 1901. I dissent because I believe that Corley pleaded facts that, if true, would allow him to pursue his action against Richardson. Corley should be given the opportunity to engage in discovery and to prove the facts pleaded in his complaint.
A brief recitation of the facts is necessary to make clear my position concerning this rather complicated area of the law. Corley set forth the following relevant facts in his complaint:
"7. [Corley] has been employed by [BSCC] since 1996. [Corley] was initially hired in 1996 as a part time employee to teach night courses. In 1999, [Corley] applied for and was hired to a full time day teaching position.
"8. [Corley] agreed to an offer of employment approved by Dr. Yvonne Kennedy when it was presented to him by Marcella Simms on or about November 3, 1999. Dr. Yvonne Kennedy was [BSCC's] President and Marcella Simms *815 was [BSCC's] Director of Human Resources at the time.
"9. [Corley's] employment agreement provided that he would be placed at Level I/B on [BSCC's] Salary Schedule upon his hiring. The employment agreement also required that as a condition of employment, [Corley] was required to complete his associate degree within one year of his employment date. As soon as he completed the associate degree, he would be moved to Level I/A.
"10. [Corley] completed his associate degree within the one year period and notified [BSCC] on August 9, 2000, that he should be moved to Level I/A on the Salary Schedule. [BSCC's] Technical Dean also requested that [Corley] be moved to Level I/A on August 11, 2000. [BSCC] did nothing.
"11. [Corley] worked at [BSCC] and requested to be moved to Level I/A for the next fifteen (15) years. [Corley] continuously made requests to [BSCC's] presidents, to Simms, and to others in central administration either on his own or through [BSCC's] Technical Dean, Dr. Harry Holloway. During these 15 years, there was no movement in [Corley's] placement on [BSCC's] Salary Schedule. [BSCC's] presidency transitioned from Dr. Yvonne Kennedy to Dr. James Lowe to a period of interim and acting presidents to Defendant Richardson.
"12. Finally, on October 1, 2015, Defendant Richardson moved [Corley] from Level I/B to Level I/A."
On February 5, 2016, Corley sued Richardson. Corley's complaint sought "declaratory, mandamus, and injunctive relief ordering and requiring that [Richardson] pay [Corley] the compensation and employment benefits due him as if he had been placed at Level I/A since 2000."
On March 21, 2016, Richardson filed a motion to dismiss under Rule 12(b)(1), Ala. R. Civ. P., requesting that Corley's complaint be dismissed for lack of subject-matter jurisdiction. Specifically, Richardson argued that Corley's action is barred by the doctrine of State immunity because Corley requests as damages the payment of money, in the form of backpay, from a State entity. On August 25, 2016, Corley filed a response to Richardson's motion to dismiss.
On September 30, 2016, the circuit court granted Richardson's motion and dismissed Corley's complaint for lack of subject-matter jurisdiction. Corley appealed. This Court today affirms that dismissal.
It is significant to note the applicable standard of review in this case, which this Court set forth in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So.2d 1013, 1017 (Ala. 2003) :
" 'The appropriate standard of review of a trial court's [ruling on] a motion to dismiss is whether "when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief." Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993) ; Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So.2d at 299. A "dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Nance, 622 So.2d at 299 ;
*816 Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986) ; Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986).'
" Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala. 2003)."
The issue before us is whether, when the facts are read in a light most favorable to him, Corley "may possibly prevail."
This Court recently set forth the relevant applicable law in Alabama State University v. Danley, 212 So.3d 112, 122-24 (Ala. 2016) :
" 'Under Article 1, § 14, Alabama Constitution of 1901, "the State and its agencies have absolute immunity from suit in any court." Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989) ; see also Taylor v. Troy State University, 437 So.2d 472, 474 (Ala. 1983). "This immunity extends to the state's institutions of higher learning."[3] Taylor, 437 So.2d at 474 ; see Breazeale v. Board of Trustees of the University of South Alabama, 575 So.2d 1126, 1128 (Ala. Civ. App. 1991). "State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Phillips v. Thomas, 555 So.2d at 83 ; see Taylor v. Troy State University, 437 So.2d at 474.'
" Williams v. John C. Calhoun Cmty. Coll., 646 So.2d 1, 2 (Ala. 1994).
" ' "The wall of immunity erected by § 14 is nearly impregnable. Sanders Lead Co. v. Levine, 370 F.Supp. 1115, 1117 (M.D. Ala. 1973) ; Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala. 1983) ; Hutchinson v. Board of Trustees of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). This immunity may not be waived. Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358, 363 (Ala. 2001) ('The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority.'); Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala. 1979) (same); Opinion of the Justices No. 69, 247 Ala. 195, 23 So.2d 505 (1945) (same); see also Dunn Constr. Co. v. State Bd. of Adjustment, 234 Ala. 372, 175 So. 383 (1937). 'This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.' State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added); see also Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963)."
" ' Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002).'
" Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 872-73 (Ala. 2004).
" ' Section 14 immunity is not absolute; there are actions that are not barred by the general rule of immunity.
" ' "[C]ertain actions are not barred by § 14. There are six general categories of actions that do not come within the prohibition of § 14 : (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against *817 State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala. 2006) (quoting Ex parte Carter, 395 So.2d 65, 68 (Ala. 1980) ); Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831 (Ala. 2008) (holding that the exception for declaratory-judgment actions applies only to actions against State officials). As we confirmed in Harbert, these 'exceptions' to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep't of Transp., 990 So.2d at 840-41."
" ' Ex parte Alabama Dep't of Fin., 991 So.2d 1254, 1256-57 (Ala. 2008). The sixth "exception" to § 14 immunity was restated in Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013), as follows:
" ' "(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)." '
" Ex parte Hampton, 189 So.3d 14, 17-18 (Ala. 2015).
" ' "These actions are sometimes referred to as 'exceptions' to § 14 ; however, in actuality these actions are simply not considered to be actions ' "against the State" for § 14 purposes.' Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). This Court has qualified those 'exceptions,' noting that ' "[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate." ' Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala. 2004) (quoting Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala. Civ. App. 1995) ) (emphasis added in Jones )."
" ' Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 840 (Ala. 2008).'
" Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala. 2011).
" ' "To determine whether an action against a State officer is, in fact, one against the State, this Court considers
" ' " 'whether "a result favorable to the plaintiff would directly affect a contract or property right of the State,"
*818 Mitchell [v. Davis, 598 So.2d 801, 806 (Ala. 1992) ], whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala. 2003) ].'
" ' " Haley [v. Barbour County], 885 So.2d [783] at 788 [ (Ala. 2004) ]. Additionally, '[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.' Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980)." '
" Ex parte Moulton, 116 So.3d 1119, 1130-31 (Ala. 2013) (quoting Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 839-40 (Ala. 2008) ).
"As our caselaw demonstrates, § 14 provides absolute immunity from suit-and thus liability-for monetary damages based on state-law claims, not only for the State but also for State officials acting in their official capacities. Ex parte Trawick, 959 So.2d 51, 55 (Ala. 2006) (holding that ' "[a] complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by ... § 14" ' (quoting Ex parte Butts, 775 So.2d 173, 177 (Ala. 2000) ))...."
In summary, an action seeking money damages from the State is necessarily barred by § 14 immunity. However, an action seeking to compel a State official to perform a ministerial act, which may result in money being paid to the plaintiff, is not barred by § 14 immunity. This Court explained the rationale for this distinction in Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831, 845-46 (Ala. 2008) (abrogated on another ground):
"[T]he trial court can generally, by writ of mandamus, order State officers in certain situations to pay liquidated damages or contractually specified debts. The payment of these certain, liquidated amounts would be only a ministerial act that State officers do not have the discretion to avoid. [Alabama Agric. & Mech. Univ. v.] Jones, 895 So.2d [867,] 878-79 [ (Ala. 2004) ] ; [ State Bd. of Admin. v.] Roquemore, 218 Ala. [120,] 124, 117 So. [757,] 760 [ (1928) ]. Furthermore, although the payment of the funds 'may ultimately touch the State treasury,' Horn v. Dunn Bros., 262 Ala. 404, 410, 79 So.2d 11, 17 (1955), the payment does not 'affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc.], 858 So.2d [257,] 261 [ (Ala. 2003) ], because the funds 'do not belong to the State,' Alabama Dep't of Envtl. Mgmt. v. Lowndesboro, 950 So.2d 1180, 1190 n. 6 (Ala. Civ. App. 2005) (two-judge opinion), and the State treasury 'suffers no more than it would' had the State officers originally performed their duties and paid the debts. Horn, 262 Ala. at 410, 79 So.2d at 17. The trial court may not, however, award retroactive relief in the nature of unliquidated damages or compensatory damages, because such relief affects a property or contract right of the State. Stark [v. Troy State Univ., 514 So.2d 46 (Ala. 1987) ]; Williams [v. Hank's Ambulance Serv., Inc., 699 So.2d 1230 (Ala. 1997) ]; Roquemore; J.B. McCrary Co. v. Brunson, 204 Ala. 85, 86, 85 So. 396, 396 (1920) ('mandamus will not lie to compel the payment of unliquidated claims'); and Vaughan [v. Sibley, 709 So.2d 482 (Ala. Civ. App. 1997) ]."
*819 Corley argues that his complaint is not barred by § 14 because, he says, his complaint does not seek compensatory damages, but seeks a writ of mandamus ordering Richardson to perform a ministerial act. The ministerial act Corley seeks to compel Richardson to perform is the payment of a certain sum of money Corley says BSCC owes him. Corley argues that his complaint fits within the first and third "exceptions" to § 14 immunity, set forth above. In so arguing, Corley relies on State of Alabama Highway Department v. Milton Construction Co., 586 So.2d 872 (Ala. 1991). This Court recently discussed Milton Construction in Danley:
"In Milton Construction, the plaintiff contracted with the State Highway Department to perform work on two interstate highways. 586 So.2d at 875. It was undisputed that the plaintiff had provided the services it contracted to provide. Nevertheless, the State Highway Department withheld $534,000 it owed the plaintiff under the terms of the contract. The trial court entered a judgment against the State Highway Department for $534,000. On appeal, the State Highway Department argued that, on the basis of sovereign immunity, it could not be made to pay the judgment. 586 So.2d at 875. In affirming the judgment, this Court stated:
" 'Once the Highway Department has legally contracted under state law for goods or services and accepts such goods or services, the Highway Department also becomes legally obligated to pay for the goods or services accepted in accordance with the terms of the contract. It follows that this obligation is not subject to the doctrine of sovereign immunity and is enforceable in the courts.'
" 586 So.2d at 875 (emphasis added). Thus, because the State Highway Department had already received the benefits of its contract with the plaintiff, an action seeking to compel payment for the services was an action seeking to compel State officers to perform their legal duty, i.e., an action under the first 'exception' to § 14 immunity."
Danley, 212 So.3d at 126-27.
I believe that Milton Construction is dispositive of this case. In the present case, when the facts are read in a light most favorable to Corley, as they must be under the applicable standard of review, they reveal the following: Corley entered into an employment contract with BSCC on November 3, 1999. The contract provides that, until Corley obtained his associate degree, he be placed at Level I/B on BSCC's salary schedule. For the period from November 3, 1999, to August 8, 2000, Corley provided a service to BSCC, which BSCC accepted, and BSCC paid Corley for that service pursuant to the terms of the contract. The contract further requires Corley to obtain an associate degree. The employment contract provides that, once Corley obtained an associate degree, he would be moved from Level I/B to Level I/A on BSCC's salary schedule. On August 9, 2000, Corley obtained an associate degree. From that time forward, Corley continued to provide a service to BSCC pursuant to the terms of the contract; BSCC accepted the service provided by Corley. However, in contradiction to the terms of the contract as asserted by Corley in his complaint, BSCC refused to place Corley at Level I/A on BSCC's salary schedule. BSCC accepted Corley's service, but allegedly refused to compensate Corley according to the terms of the contract. On October 1, 2015, Richardson placed Corley at Level I/A on BSCC's salary schedule as required by the contract.
Like the plaintiff in Milton Construction, Corley filed an action to compel Richardson, *820 a State official, to perform her legal duty. Reading the facts in a light most favorable to Corley, I believe that Corley's action may be one under the first "exception" to § 14 immunity. Based on the facts asserted by Corley in his complaint, the employment contract provided the legal duty Richardson was required to perform. According to Corley, the contract required BSCC to pay Corley in accordance with Level I/A of BSCC's salary schedule from August 9, 2000, to October 1, 2015. Corley provided a service to BSCC, which BSCC accepted. Under the terms of the contract, as asserted by Corley, Corley earned a salary commensurate with Level I/A of BSCC's salary schedule from August 9, 2000, to October 1, 2015. However, during that time, BSCC paid Corley a salary commensurate with Level I/B of BSCC's salary schedule. By accepting Corley's service, BSCC became legally obligated to pay a certain amount of money for that service in accordance with the terms of the contract as stated in Corley's complaint. Corley's action is one requesting that Richardson be required to perform her legal duty of paying Corley the specified amount of money BSCC is legally obligated to pay Corley under the terms of the contract.
In summary,
"although the payment of the funds 'may ultimately touch the State treasury,' Horn v. Dunn Bros., 262 Ala. 404, 410, 79 So.2d 11, 17 (1955), the payment does not 'affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc.], 858 So.2d [257,] 261 [ (Ala. 2003) ], because the funds 'do not belong to the State,' Alabama Dep't of Envtl. Mgmt. v. Lowndesboro, 950 So.2d 1180, 1190 n. 6 (Ala. Civ. App. 2005) (two-judge opinion), and the State treasury 'suffers no more than it would' had the State officers originally performed their duties and paid the debts. Horn, 262 Ala. at 410, 79 So.2d at 17."
Harbert International, 990 So.2d at 845-46. Based on the facts asserted in Corley's complaint, the backpay Corley requests Richardson pay him are funds that do not belong to the State. Corley earned those funds by providing a service to BSCC, which BSCC accepted. According to the facts alleged in Corley's complaint, the terms of the contract specify exactly how much backpay Corley is entitled to and BSCC is obligated to pay. Accordingly, Corley has demonstrated that he may prevail in this case based on the facts asserted in his complaint.

This Court recognized BSCC as a State agency in State Board of Education v. Mullins, 31 So.3d 91, 96 (Ala. 2009).