268 So.2d 30

**Hoyt B. HAMILTON and Association of County Commissions of Alabama**

v.

**AUTAUGA COUNTY et al.**

7 Div. 909.

Supreme Court of Alabama.

Sept. 28, 1972.

Rehearing Denied Nov. 9, 1972.

420

Oakley W. Melton, Jr., Montgomery, Gerald C. Swann, Ashville, for appellants.

William J. Baxley, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for appellees.

BLOODWORTH, Justice.

The appeal in this case is from a final decree in a declaratory judgment proceeding wherein an act, providing that sheriffs be compensated by an annual salary, was held to be constitutional when freed of its unconstitutional exceptions.

The bill of complaint sought a declaratory judgment as to the constitutionality of Act No. 1170, Acts of Alabama, 1969, p. 2179, appvd. Sept. 13, 1969, and prayed that the counties of Alabama be permanently

enjoined from complying with the provisions of the Act.

The bill of complaint was brought by Hoyt B. Hamilton, a resident, taxpayer, and former probate judge of St. Clair County, and the Association of County Commissions of Alabama, an unincorporated association composed of the members of the various county governing bodies of the State. The original respondents were all of the counties and all of the sheriffs of the State of Alabama. The sheriff of Greene County was dismissed as a party respondent, and of the counties, only Geneva, Bullock, Blount, Jefferson and Tallapoosa remain in the suit as respondents.[1]

For a better understanding of the issues presented, Act No. 1170 is herein set out in full, viz:

## "AN ACT

"To regulate further the office of sheriff in this State; to prescribe the annual salaries of sheriffs of the several counties of the state classified on a population basis; to provide for operation of the sheriff's office on a salary basis; to provide for and regulate the collection of sheriffs' fees and the payment thereof into the county treasury; to repeal conflicting laws, general, local and special.

"Be It Enacted by the Legislature of Alabama:

"Section 1. Sheriffs of the several counties in this State shall be compensated for their services by an annual salary payable in equal installments out of the county treasury as the salaries of other county employees are paid. The annual salary of the sheriff shall depend on the number of inhabitants of the county as shown by the most recent federal decennial census

of population of the county and shall be in such amount as is hereinafter prescribed:

" 'In counties having a population of 12,400 or less, the annual salary of the sheriff shall be $10,000. In counties having populations of not more than 20,000 nor less than 12,400, the annual salary of the sheriff shall be $12,000, except that in all counties having a population of not less than 15,000 nor more than 15,300, the annual salary of the sheriff shall be $8,400.

" 'In counties having populations of not less than 20,000 nor more than 30,000 the annual salary of the sheriff shall be $13,000, except that in all counties having a population of not less than 24,800 nor more than 25,400, the annual salary of the sheriff shall be $12,000, and in all counties having a population of not less than 16,150 nor more than 17,350 the annual salary shall be set by the county governing body by resolution properly adopted in an amount not to exceed $12,000.

" 'In counties having populations of not less than 30,000 nor more than 96,000 the annual salary of the sheriff shall be $15,000, except that in all counties having a population of not less than 50,000 nor more than 51,000 the annual salary of the sheriff shall be $12,000, except in counties having a population of not less than 48,500 nor more than 49,500 the salary of the sheriff shall be $16,000, except in counties having a population of not less than 31,000 nor more than 32,000, the annual salary of the sheriff shall be $12,000, except in counties having a population of not less than 61,000 nor more than 62,000, the annual salary of the sheriff shall be $13,500, except in counties having a population of not less than 65,000 nor more than 70,000, the annual salary of the sheriff shall be $14,000, except in counties having a popu-

1. Greene County and its sheriff were dismissed on their own motion as parties respondents because of Amendment 236, Constitution of Alabama of 1901; Pike County was changed, on its own motion, from a party respondent to a party complainant; Butler, Dale, and Crenshaw

Counties filed answers friendly to complainants; Geneva and Bullock filed neutral "appearance" answers; Blount, Jefferson and Tallapoosa Counties allied themselves with respondent sheriffs; and, decrees pro confesso were taken against the other fifty-seven counties.

lation of not less than 48,000 nor more than 49,000, the annual salary of the sheriff shall be $12,000, except in counties having populations of not less than 41,000 nor more than 45,000 the annual salary of the sheriff shall be set by the county governing body by a resolution duly adopted in an amount not to exceed $15,000; provided, however, this Act shall not apply to counties having a population of not less than 37,000 nor more than 41,000.

" 'In counties having populations of not less than 96,000 nor more than 125,000, the annual salary of the sheriff shall be $16,500;

" 'In counties having populations of not less than 125,000 nor more than 500,000 the annual salary of the sheriff shall be $18,000;

" 'In all counties having a population of more than 500,000 the annual salary of the sheriff shall be $19,000.

" 'Such salary shall be in lieu of all fees, compensation, allowances, percentages, charges and costs, except as herein otherwise provided. The sheriff and his deputies shall, however, be entitled to collect and retain such mileage and expense allowances as may be payable according to law for returning or transferring prisoners and insane persons to or from points outside the county.'

"Section 2. All fees, commissions, percentages, allowances, charges and court costs heretofore collectible for the use of the sheriff and his deputies including the allowances and amounts received for feeding prisoners, shall be collected and paid into the general fund of the county except that in all counties having a population of not less than 50,000 nor more than 51,000 and in counties having a population of not less than 56,000 nor more than 60,000 both as shown by the most recent decennial census of said counties shall be paid the allowances authorized for the feeding of prisoners and in those counties where sheriff's office is now authorized by law to collect the allowances for the feeding of

prisoners, shall be allowed to continue to collect and retain said amounts and allowances received from the feeding of prisoners.

"Section 3. The county governing body shall also furnish the sheriff with the necessary quarters, books, stationery, office equipment, supplies, postage and other conveniences and equipment, including automobiles and necessary repairs, maintenance and all expenses incidental thereto, as are reasonably needed for the proper and efficient conduct of the affairs of the sheriff's office.

"Section 4. The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

"Section 5. All laws or parts of laws, general, local or special, in conflict herewith are hereby repealed.

"Section 6. This Act shall become effective upon the expiration of the term of office of the sheriffs who are incumbents of such office when this Act becomes law."

Section 1 divides the counties of the State into seven population classifications and prescribes the salaries of those sheriffs whose counties fall into each of such classifications. Section 1 also contains eleven population categories which are excepted from three of the general population classifications. Different salaries are prescribed for those whose counties fall within the excepted categories. When the Act was passed at the Regular Session of the Legislature in 1969, each of the excepted categories applied to only one county. However, because of the narrow population limitation contained in each excepted category, and because the population of each county is determined by the most recent decennial census, the 1970 census altered the number of counties falling into each category. After 1970, five of the excepted categories were found not to apply to any county, five of the excepted categories applied to more than one county, while only one cate-

gory applied to only one county, and a different county at that.[2]

Set out in the following table are the seven general population classifications and the salary prescribed for each. Also shown are the population categories which are excepted from three of the seven general brackets, the salary prescribed for each excepted category, and the county or counties which fall into each excepted category under both the 1960 and 1970 census. (It would serve no useful purpose to indicate the various counties which fall into each of the seven general population classifications.)

|  | Population Range | Salary | Excepted Counties Only | |
| --- | --- | --- | --- | --- |
|  |  |  | 1960 Census | 1970 Census |
| (1) | 1–12,400 | $10,000 | | |
| (2) | 12,400–20,000 | 12,000 | | |
|  | Except: | | | |
|  | 15,000—15,300 | 8,400 | Henry | |
|  | 16,150–17,350 | 12,000 or less | Cherokee | Choctaw, Fayette, Sumter, Washington, Wilcox, Winston |
| (3) | 20,000–30,000 | $13,000 | | |
|  | Except: | | | |
|  | 24,800–25,400 | 12,000 | St. Clair | Chilton, Macon, Pike |
| (4) | 30,000–96,000 | 15,000 | | |
|  | Except: | | | |
|  | 31,000–32,000 | 12,000 | Dale | |
|  | 37,000–41,000 | Not apply | Chambers | Jackson, Shelby |
|  | 41,000–45,000 | 15,000 or less | DeKalb | DeKalb, Limestone |
|  | 48,000–49,000 | 12,000 | Marshall | |
|  | 48,500–49,500 | 16,000 | Baldwin | |
|  | 50,000–51,000 | 12,000 | Houston | |
|  | 61,000–62,000 | 13,500 | Lauderdale | Lee |
|  | 65,000–70,000 | 14,000 | Talladega | Lauderdale, Talladega |
| (5) | 96,000–125,000 | 16,000 | | |
| (6) | 125,000–500,000 | 18,000 | | |
| (7) | 500,000 and over | 19,000 | | |

Section 2 of the Act provides that the fees, commissions, percentages, allowances, charges and court costs (which formerly were collected for the use of the sheriffs), shall be paid into the general fund of each county. However, Section 2 also contains three exceptions which allow the sheriffs of those excepted counties to continue to collect allowances authorized for the feeding of prisoners. These exceptions are:

(1) Counties with a population of from 50,000 to 51,000, which applied only to Houston County by the 1960 census and applies to no county by the 1970 census.

(2) Counties with a population of from 56,000 to 60,000, which applied only to Dallas County by the 1960 census and applies to Baldwin, Houston and Walker Counties by the 1970 census.

(3) All counties where the sheriff, at the time the Act was passed, was authorized by law to collect the allowances for the feeding of prisoners.

2. While not an issue herein, we judicially know that the Legislature at the Regular Session 1971 passed Act No. 77, appvd. July 15, 1971, which deleted one of the eleven population exceptions. This is the only change this Act made.

The final decree of the trial court held that the inclusion of all of these exceptions in the Act rendered the Act unconstitutional because each exception pertained to only one county (at the time of the Act's passage), and these constituted local laws, which were not advertised as required by Section 106 of the Alabama Constitution of 1901. However, the trial court further held that, by the exercise of the severability clause in the Act, these unconstitutional exceptions could be severed and the remaining Act would be constitutional, containing, as it did, seven salary brackets which applied to all of the counties in the State, and which were "reasonably related to the difference in population."

From this decree, complainants Hamilton and the Association of County Commissions appeal.

Both parties agree that the Act, when passed, contained exceptions which were clearly local laws and which, not having been advertised as required by Section 106 of the Constitution of 1901, were unconstitutional. The questions raised on this appeal are: I. Whether the trial court erred in deleting these exceptions by exercise of the severance clause; and II. Whether the trial court erred in holding that, after removal of these unconstitutional exceptions, the remaining provisions of the Act were constitutional and should be given effect.

## I. *Severability*

Appellants-complainants Hamilton and the Association of County Commissions argue that the trial court erred in severing the local exceptions because these exceptions are too much an integral part of the Act to be deleted by exercise of the severance clause and that therefore the entire Act must be declared unconstitutional.

In Allen v. Louisiana, 103 U.S. 80, 26 L.Ed. 318 (1880), the Supreme Court of the United States held with respect to this question, viz:

"It is an elementary principle that the same statute may be in part constitu-

tional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. * * *"

■ The test by which it may be determined whether that part of an act, which remains after severance of unconstitutional provisions, should survive and be given legal effect has been frequently stated by this court, viz:

"* * * If after the deletion of the invalid part, the remaining portions of an Act are complete within themselves, sensible, and capable of execution, the Act will stand notwithstanding its partial invalidity. Springer v. State ex rel. Williams, 229 Ala. 339, 157 So. 219." Wilkins v. Woolf, 281 Ala. 693, 697, 208 So.2d 74, 78. 18 Ala.Digest, Statutes, Key 64(1).

■ The real and dominant object and purpose of this Act is to place each sheriff of Alabama on an annual salary and to prescribe the salary to be paid him, according to the population bracket into which his county falls. This salary is in lieu of all fees, commissions, etc., except as otherwise provided in the Act. Such fees, commissions, etc., heretofore collectible for the sheriffs, shall be paid into the general fund of the county. This is clear both from the caption and the contents of the Act itself.

Severed of its unconstitutional exceptions, the Act places all the counties of the State into seven population brackets and prescribes the salary of the sheriff of each county according to the population classification into which each county falls. These classifications bear a rational and substantial relation to the objects of the legislation. The provisions, remaining after severance, are complete within themselves, as the unconstitutional exceptions add nothing to the scope of the Act. The Act is sensible, the difference in salary being reasonably related to the difference in population,

And, the Act is capable of execution. We conclude, therefore, that the provisions remaining after severance can stand as a valid legislative enactment.

■ Appellants, however, insist that the exercise of the severance clause defeats the legislative intent; that the clear intention of the legislature was to exempt certain counties from the general provisions of the Act, and that had these exceptions not been written into the Act, it probably would not have passed.

It is well established in our law that,

"In the interpretation of statutes, the legislative will is the all important or controlling factor, and it has been frequently stated, in effect, that the intent of the legislature constitutes the law. * * *" Weill v. State, ex rel. Gaillard, 250 Ala. 328, 333, 34 So.2d 132, 136 (1948). 18 Ala.Digest, Statutes, Key 181 (1).

And, this court has also held that,

"* * * We can only learn what the Legislature intended by what it has said, and have no right 'to stray into the mazes of conjecture or search for an imaginary purpose.'" Holt v. Long, 234 Ala. 369, 372, 174 So. 759, 761 (1937).

"'The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the members of the Legislature, or its legislative committees or any other person.'" James v. Todd, 267 Ala. 495, 506, 103 So.2d 19, 28–29 (1958).

■ In the light of these pronouncements, it seems to us that we would be straying "into the mazes of conjecture," or inquiring "into the motives which influenced the Legislature" in passing this legislation if we attempted to determine whether it would have passed had the unconstitutional exceptions not been included. We must determine the intent of the legislature "by what it has said" and by that which it has "expressed in the statute." Holt v. Long, supra; James v. Todd, supra.

One of the specific provisions of the Act is a severability clause providing that, "If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect that part which remains."

■ This court has recently expressed the rule as to separability clauses in Allen v. Walker County, 281 Ala. 156, 162, 199 So.2d 854, 860 (1967):

"We recognize that a separability clause shall be given effect, where possible, to save legislative enactment (Alabama State Fed. of Labor v. McAdory, 246 Ala. 1, at p. 25, 18 So.2d 810), that is if the invalid portion is not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation, in which event it must be assumed that the legislature would not have passed the enactment thus rendered meaningless. Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416."

■■ We do not think the invalid portions of the Act were so intertwined with the remaining portion so "that such remaining portions are rendered meaningless by the extirpation * * *."

We further recognize that,

"* * * [W]here a statute is thus partly infected with invalidity * * * the severable or saving clause thereof * * * is persuasive to the judicial mind the legislature intended that should the invalid portion be stricken, the valid part should survive. State ex rel. Clarke

v. Carter, 174 Ala. 266, 56 So. 974; State [ex rel. Crumpton] v. Montgomery, supra [177 Ala. 212, 59 So. 294]; Opinion of the Justices, 247 Ala. 195, 23 So. 2d 505; Williams v. Standard Oil Co. of Louisiana, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596." Newton v. City of Tuscaloosa, 251 Ala. 209, 218, 36 So.2d 487, 493 (1948).

While it was unquestionably the intention of the legislature to exempt certain counties from the general provisions of this Act, the plain and unambiguous language of the Act itself (to which our consideration is restricted) clearly indicates that the legislature also intended the Act to be severable. Therefore, we think we may logically conclude that the legislature intended that, in the event those provisions (exempting certain counties) might be stricken from the Act because they were unconstitutional, the remaining valid portions should survive and be given legal effect.

## II. *Constitutionality*

Appellants, however, further insist that even if the general provisions survive severance of the local exceptions, the Act is still unconstitutional, and cannot be given effect because it is violative of § 281 and Amendment 92 of the Alabama Constitution of 1901.

Section 281, Alabama Constitution 1901, provides, as follows:

"Sec. 281. The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

Amendment 92 to the Aabama Constitution 1901, provides basically the same restriction, viz:

" * * * [N]either the legislature, nor any county of the state shall, by the imposition of new, different, and additional duties or otherwise, increase, or authorize the increase of, the salary, fees or other compensation of any officer of the state or of any county of the state, who is elected or appointed for a fixed term, during the term for which he is elected or appointed * * *. * * *"

Since the Act does prescribe different salaries, based on the population of the various counties, as determined by each succeeding decennial census, appellants contend that the salaries of the sheriffs are subject to change during their term of office each time a new census classification occurs.[3]

Act No. 1170 is unquestionably subject to the restrictions of § 281 and Amendment 92, supra, but we cannot agree that these constitutional provisions impair the constitutionality of the Act. These provisions serve to fix the date on which changes in sheriffs' salaries (resulting from population changes) can be put into effect.

In State Docks Commission v. State, 227 Ala. 521, 528, 150 So. 537, 542–543 (1933), this court held that § 281 did not affect the constitutionality of a bill to reduce the salary of the superintendent of the State Docks, but that § 281 simply prevented the Act from taking effect until the superintendent had completed his then present term. After setting out § 281 (along with various other sections similarly restricting specific public officers), this court concluded, viz:

" * * * The limitations in the sections of the Constitution above quoted

---

3. See Title 1 § 14, Code of Alabama 1940, as amended, which provides, in part, as follows:
   "§ 14. Reclassification date.—The ninetieth day after the first day of the first regular legislative session held next after the publication by the federal gov-

ernment of the regular federal decennial population census for Alabama is hereby fixed as the date for any reclassification under any law requiring classification based on such said census. * * *"

do not in any way prevent the Legislature, in any proper manner it sees fit and at any time, from passing a law or laws either increasing or diminishing the pay, salaries, or compensation of any officer or employee of the state. With a proper subject clearly expressed in the title of the act, we know of no reason why it could not fix in one act the salaries and compensation of all the officers and employees of the state or any department thereof, or any one or any number of the officers and employees of the state or any department thereof. The limits set forth in said sections would in no sense impair the validity of such an act. They would only affect the date at which the various provisions of the law would go into effect. . * * * These constitutional provisions must be read into every enactment, and such an enactment, unless otherwise expressed in the act itself, would go into effect at once or at such times as prescribed by the act as to all officers and employees not protected by the above sections of the Constitution, and *as to the officers and employees named in said sections it would not go into effect during the term for which they had been elected but would apply to their successors or to them if and when elected to succeed themselves.*" [Our emphasis.]

In Hawkins v. *Jefferson County,* 233 Ala. 49, 51–52, 169 So. 720, 722 (1936), this court considered the effect of § 281 on the constitutionality of an act reducing the salary of the probate judge of Jefferson County and concluded as follows:

"* * * We do not think that because of the circumstance that an act cannot for the period of a certain time decrease a salary, it may not be effective to do so at the end of that period, although its terms are that its effect will begin during the prohibited time. *That situation merely is to suspend its effect until such time as it shall be operative*

*under the Constitution.* State Docks Commission v. State, 227 Ala. 521(3), 150 So. 537; State ex rel. Thomas v. Gunter, 170 Ala. 165(3), 54 So. 283; 46 Corpus Juris, 1022, note. The act was not void for that reason when it was enacted, but its effect would be limited by the Constitution so as not to have immediate operation." [Our emphasis.]

■ On account of the provisions of § 281 and Amendment 92, we hold that there can be no change in the salary of any sheriff, who is in office on the reclassification date,[4] in any county which, because of population changes, is placed in a different salary classification bracket. Salary changes resulting from population fluctuations can take effect only when the sheriff in office on the reclassification date has concluded his term and either he, or his successor, has begun serving a new term.

Thus, we conclude that Act No. 1170 is not rendered unconstitutional, as violating either § 281 or Amendment 92, but that these constitutional provisions prevent any changes in sheriffs' salaries until the beginning of the next succeeding term following the reclassification.

Appellants then contend that the Act, even with the local exceptions severed, is unconstitutional as violative of § 96 and § 104(24), Alabama Constitution of 1901. These sections are set out below.

"Sec. 96. The legislature shall not enact any law not applicable to all the counties in the state, regulating costs and charges of courts, or fees, commissions or allowances of public officers."

"Sec. 104. The legislature shall not pass a special, private, or local law in any of the following cases:

*     *     *     *     *     *

"(24) Creating, increasing, or decreasing fees, percentages, or allowances of public officers;".

---

**4.** We do not decide in this case what that date is, since this is not an issue in this case. In note 3, we simply called attention to the provisions of Title 1, § 14.

Appellants contend that while previous constitutional amendments have exempted 27 counties from the strictures of § 96, there are 39 counties to which this statute still applies, and that "the Act cannot ever apply to 39 counties in Alabama until there is an amendment of Section 96 applicable to them." Appellants cite Opinion of the Justices, 255 Ala. 656, 658, 53 So.2d 367, 369 (1951), for the proposition that:

"* * * A statute is local which creates a classification of counties by population, if it cannot ever apply to some counties until there is an amendment of section 96 applicable to them * * *."

We see no merit in this argument. Section 96 prohibits "any law not applicable to all the counties." Section 104 prohibits any "special, private or local law." As we have concluded, after severance of the local exceptions, Act No. 1170 is a general law. It applies to all the counties, as all of the counties of the State fall into one of the designated population classifications.[5] Opinion of the Justices, supra, is inapposite because Act No. 1170 is a general, rather than a local, law and applies to all the counties without the necessity of amending § 96.

Act No. 1170 also contains a repealer clause in Section 5 which has the effect of repealing the various local laws passed by 27 counties, under previous constitutional amendments, which permit payment of salaries to sheriffs of those counties.

■ We conclude therefore that Act No. 1170, as severed, applies to all the counties of the State and is not in violation of either § 96 or § 104.

Appellants finally contend that Act No. 1170 violates, and is in conflict with, Amendment 196 to the Alabama Constitu-

tion of 1901. This amendment provides as follows:

"The legislature may, from time to time, by general or local laws, to become effective only if approved by a majority of the qualified electors of St. Clair county voting at a referendum election held not less than three months after the final adjournment of the legislative session at which such law is enacted, fix, alter, and regulate the costs and charges of courts in St. Clair county and the fees, commissions, percentages, allowances, and salary, including the method or basis of their compensation, to be charged or received by the judge of probate, sheriff, tax assessor, tax collector, register, circuit clerk, and any other officer of St. Clair county, including the right to place any of such officers on a salary and provide for the fees charged or collected by them to be paid into the treasury from which their salaries shall be paid."

We gather appellants' argument is, that because Amendment 196 requires any general law fixing the salary of the sheriff of St. Clair County to be approved by the voters of that county, Act No. 1170 may not go into effect anywhere in the State until ratified by the St. Clair County electorate. We cannot agree with this interpretation.

■ In State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 233–234, 66 So.2d 726, 731 (1953), this court quoted with approval the trial court's holding with respect to statutory interpretation that,

"'If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that which is workable and fair. * * * *'"

5. Except Greene County, or any other county similarly situated. As we have heretofore pointed out, Green County, by constitutional amendment is specifically excepted from § 96 and the sheriff's salary in Greene County is specifically set by such amendment. See Amendment 236.

We think this principle to be likewise applicable to amendments.

Even should it be argued that the language of Amendment 196 is not ambiguous, such a construction as appellants contend for, is clearly contrary to the spirit of the amendment. This court has frequently held that:

" 'The spirit and not the letter should prevail when the latter would lead to an injustice or absurdity.' Tennessee Coal, Iron & R. Co. v. State, ante p. 152, 177 So. 905, 906, and cases there cited." Broaddus v. Johnson, 235 Ala. 314, 179 So. 215 (1938).

■ We conclude, therefore, that the people of the State of Alabama did not intend, when they ratified Amendment 196, that a general law, fixing sheriffs' salaries throughout the State could not go into effect anywhere in the State until ratified by the voters of one county, St. Clair County. Rather, we are of the opinion that, in ratifying Amendment 196, it was the intention of the people simply to give the voters of St. Clair County the option of deciding whether a general or local law fixing sheriffs' salaries, inter alia, would be effective in their county. It seems to us that any other interpretation would result in an unworkable absurdity, totally contrary to the spirit of Amendment 196.

[12] Act No. 1170, by its express terms, became effective in all counties of the State (except Greene and St. Clair) upon expiration of the terms of office of the incumbent sheriffs. By virtue of Amendment 196, it will take effect in St. Clair County only when ratified by a majority of the voters. We think that even if Act No. 1170 should be rejected by the St. Clair electorate, it will still stand as a general law, within the meaning of Section 110, Alabama Constitution of 1901, since it applied to the State as a whole, with the exception of those two counties specifically deleted from the whole by constitutional amendment, i. e., Greene and St. Clair Counties.

In view of our conclusions, we do not find it necessary to comment on the trial court's holding that to interpret Amendment 196 as precluding Act No. 1170 from taking effect anywhere in the State until approved by the voters of St. Clair County, constitutes a denial of due process under the 14th Amendment to the United States Constitution.

In Opinion of the Justices, 284 Ala. 626, 227 So.2d 396 (1969), the justices had before them an almost identical question. The justices were asked to express their opinion on the constitutionality of H.B. 342 which authorized municipalities in dry counties to hold elections as to whether alcoholic beverages could be sold within such municipalities. By amendment, *twenty-three (23) counties were exempted from operation of the act, over one-third (⅓) of the counties in the entire State.*

The amendments contained impermissible population classifications, very similar to the population classifications in the case at bar which all agree make Act 1170 unconstitutional unless saved by the severability clause.

A majority of this court, Chief Justice Livingston, Justices Lawson, Simpson and Coleman, in upholding the constitutionality of H.B. 432, agreed that when the amendments were stricken from the bill (by operation of the severability clause) the remainder of the bill was not violative of Section 111, Constitution of 1901.

These justices opined, viz:

"The responsibility of the Supreme Court is to give effect to the legislative intent where it is manifested. State v. Union Tank Car Co., 281 Ala. 246, 201 So.2d 402.

\*      \*      \*      \*      \*      \*

"It is a well-established rule in this State that a severability clause should be given effect where possible in order to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d

854; Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74; San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 803. Such a clause or provision in an act is to be given its full scope and effect. Shuttlesworth v. Birmingham Bd. of Ed. of Jefferson County, Alabama, 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

"When that which we have declared unconstitutional is stricken, there remains an act complete in itself, sensible and capable of being executed. The striking of the invalid sections does not overthrow the entire act. Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172, cert. denied 368 U.S. 896, 82 S.Ct. 173, 7 L.Ed.2d 93.

"*The severability clause* in House Bill 342, declaring that the unconstitutionality or invalidity of any part of the Act shall not affect the part of the Act which remains, *serves to assure this Court that the legislature intended that the Act should be divisible,* and that the invalidity of any part thereof should not affect the validity of remaining portions of such Act. Opinion of Justices, 247 Ala. 195, 23 So.2d 505. *Therefore, our answer is that the unconstitutionality of the bill as presently written is overcome by the striking of the amendments thereto.*" [Our emphasis.]

■ The severability clause in H.B. 342 is identical to that in the case at bar. Of course, it is *our rule* that advisory opinions are not opinions of the Supreme Court and do not bind the justices.

Nevertheless, it is common knowledge, within bench and bar in Alabama, that opinions are followed and have been cited many times as authority for the propositions they lay down.

It should also be noted that the Opinion of the Justices, supra, was rendered August 19, 1969. Act 1170 was passed by the legislature September 4, 1969, sixteen days later. It would appear that the legislature had a right to rely on the pronouncement of a majority of the justices in Opinion of the Justices, upholding a severability clause identical to the one in Act 1170 and under an almost identical fact situation.

Since the conjecture is indulged that the legislature would not have enacted Act 1170 without these exceptions, may not the converse also be indulged—that the legislature would not have accepted the amendments had it not relied on Opinion of the Justices, supra, that the severability clause would save the act if the amendments were held unconstitutional?

For the reasons stated, we conclude that the unconstitutional provisions of Act No. 1170 should be severed and the remaining provisions be given effect as a valid legislative enactment.

We think it is not inappropriate to commend appellants for their very excellent briefs, with which we were favored.

Affirmed.

HARWOOD, MADDOX, McCALL, SOMERVILLE, JJ., and LAWSON, Special Judge, concur.

HEFLIN, C. J., and MERRILL and COLEMAN, JJ., dissent.

MERRILL, Justice (dissenting):

I have concurred in the dissent of COLEMAN, J., which was prepared prior to mine.

In our recent decision of City of Mobile v. Salter, 287 Ala. 660, 255 So.2d 5, in dealing with a severability or separability clause, we cited Wilkinson v. Stiles, 200 Ala. 279, 76 So. 45, and Spraigue v. Thompson, 118 U.S. 90, 6 S.Ct. 988, 30 L.Ed. 115, for the principle that "If a clause in a statute which violates the Constitution cannot be rejected without causing the act to enact what the Legislature never intended, the whole statute must fall."

We also said in *Salter,* supra:

"\* \* \* If the act thus deleted of the invalid part is competent to stand without the invalid part, and leaves an enactment complete within itself, sensible, and capable of being executed, it will stand, *unless the two parts—the valid and invalid—are so inseparable as to raise the presumption that the Legislature would not have enacted the one without the other.* \* \* \*" [Emphasis supplied]

The history of Act No. 1170 is very enlightening as to the intent of the Legislature. This court has judicial knowledge of the legislative records of the state, including the legislative Journals and the records of bills as introduced and Acts as passed. In re Opinion of the Justices, 267 Ala. 114, 100 So.2d 681; State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 So. 942.

Act No. 1170 was introduced as SB 674 on July 7, 1969, and was a general bill. A substitute bill was approved in committee, the chief changes being a reduction of the salaries in the various population classifications. The bill was amended on the floor and passed by the Senate on August 15. It went to the House of Representatives, was referred to a committee and was duly reported with an amendment changing the salary of sheriffs in the top population classification to $21,000.00. The bill came up for passage on August 21, at which time it was amended several times, eight of the amendments being exceptions of eight different single counties, and the bill was passed with only two dissenting votes. On August 26, the last day of the session, the Senate non-concurred and asked for a conference committee. The House acceded and appointed a conference committee. The conference committee re-wrote Section 1 and removed all the single county exceptions except two and the Senate concurred in the conference report. But the House voted to non-concur and asked for another conference committee. The Senate acceded and appointed a new committee. This new conference committee came back with a bill which contained more single county exceptions and the Senate concurred in the report. But the House non-concurred and asked for still another conference committee. This third committee came back with more single county exceptions than had ever been in the bill previously. Both the House and the Senate concurred in this report near midnight and the bill was delivered to the Governor at midnight on the last day of the session.

The history alone shows that the Legislature would never have passed the bill without the single county exceptions and their addition, withdrawal and addition the second time in conference committees show that they were so intwined with the other parts of Section 1 that "the two parts—the valid and the invalid—are so inseparable as to raise the presumption that the Legislature would not have enacted the one without the other."

This history does more than raise a "presumption." In my opinion, it furnishes positive, uncontroverted proof that the Legislature would never have passed Act No. 1170 without the inclusion of the several single county exceptions. It took three different conference committees and the addition of more single county exceptions on the last night of the session to even get the House to approve the bill.

To give effect to the severability clause in Act No. 1170 to the question before us would put sheriffs in many counties on salaries different from what the Legislature plainly intended, and in territories that the Legislature had plainly excepted.

I doubt that there has ever been an Act before this court where the intent of the Legislature was so clear that the Legislature would not have passed the bill without the inclusion of several unconstitutional provisions, and which both sides to this suit agree, as does the majority of this court, are unconstitutional.

Legislative intent has always been a polestar in determining the constitutionality of a statute. Here, the majority has had to completely disregard the proven intent of the Legislature and has elevated the ordinary severability clause found in nearly all Acts to a high position of eminence. I think it is a first for the court to hold (not opine) that a severability statute is of more importance than legislative intent. And it is noted that the severability clause was not a late addition to the bill but was § 4 of SB 674 when it was introduced and contained no unconstitutional provisions.

The majority refers to Opinion of the Justices, 284 Ala. 626, 227 So.2d 396, when this court was asked, among other things, if a bill which contained several single county exceptions violated Section 111 of the Constitution. There, all the Justices agreed that the single county exceptions were unconstitutional but the majority said that the bill was not unconstitutional because it was saved by the separability clause. I signed an opinion which contained the following three paragraphs and I still adhere to that opinion:

"To give effect to the separability clause by striking Section 4 would make the proposed law effective in many counties in which the Legislature specifically had exempted and thus a separability clause would be given more effect than the expressed intention of the Legislature in dealing with numerous counties of the state.

"We have not been cited to, or have we found, any case in Alabama which holds that a separability clause in a bill can change it from a local bill to a general bill. We do not think such a clause can nullify the effect of Section 111 of the Constitution.

"It would be an anomaly if a general bill could be converted into a local bill by amendments, and after passage as amended, be reconverted into a general bill by invocation of a separability clause. Such a chameleon process in itself is a complete denial of the legislative intent and legislative processes."

The moment that the single county exceptions or either of them were included at various places in Section 1 of Act No. 1170, it became a local bill because each of the exceptions applied to only one county. Thus, the bill was contrary to Section 104 of the Constitution which requires publication of local bills and contrary to Section 111 already quoted in this opinion. And for the distinction between a general law and a local law, it is only necessary to read Section 110 which defines each.

I do not understand the reasoning, the logic or the conclusion when an appellate court holds that a severability clause in a *statute* can have more weight than a section of the State *Constitution* (§ 111) which positively forbids the amending of a general bill on its passage so as to become a local law. Section 111 is a constitutional limitation on the otherwise plenary power of the Legislature, and no words of the Legislature in a severability clause of a statute ought to be allowed to set aside or vacate the solemn prohibition of the Constitution of the State of Alabama.

I respectfully dissent.

HEFLIN, C. J., and COLEMAN, J., concur.

COLEMAN, Justice (dissenting):

The majority opinion recognizes that certain parts of Act No. 1170 are local laws which are invalid because Section 106 of the Constitution of 1901 has not been complied with. I understand that the invalid parts of the act are those parts which undertake to remove certain counties from the population class into which those counties would otherwise fall with respect to salary of the sheriff and allowances for feeding prisoners. I agree that those parts of the act are invalid.

The majority find that the invalid parts of the act may be disregarded and the remainder of the act may be allowed to stand. I do not concur in this finding.

It appears that the invalid parts of the act applied to eleven counties and excepted them from the general operation of the act when it was passed in 1969. It further appears that the invalid parts of the act excepted sixteen counties from the general operation of the act under the 1970 census. The rule with respect to striking down invalid parts of a legislative act and allowing the remainder to stand has been expressed by this court as follows:

". . . . An enactment may be valid in part and invalid in part, and the general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken.—Powell v. State, 69 Ala. 10; Doe ex dem. Davis v. Minge, 56 Ala. 121; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am.St.Rep. 23; 36 Cyc. pp. 976–978. It is also to be said, in the nature of limitation of the rule stated, that the whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated or intended by the lawmakers, or where that invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent.—Author, supra." State ex rel. Crumpton v. Montgomery, et al. Excise Commissioners, 177 Ala. 212, 240–241, 59 So. 294, 302–303.

"We recognize the force of the argument that the separability clause should be given effect, where possible, to save the Act. But the principle is well understood that a clause of this character may not be invoked to save the Act when in contravention of the obvious legislative intent. State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. 294; State ex rel. Lister v. Hawkins, 229 Ala. 144, 155 So. 692; Wilkinson v. Stiles, 200 Ala. 279, 76 So. 45; Williams v. Standard Oil Co., 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596. . . . ." Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 25, 18 So.2d 810, 830.

". . . . The rule also is, however, that if by striking out a void restrictive clause, the remainder of an act, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent and the whole act would be affected and made void by the invalidity of such part; and, if a clause which violates the Constitution cannot be rejected without causing the act to enact what the legislature never intended the whole statute must fall. (Citation Omitted)" Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 372, 131 So.2d 172, 180.

See also many authorities cited in Alabama Digest, Statutes, Key No. 64(1).

Being of opinion that it cannot be presumed that the Legislature intended to pass the valid part of the act without the invalid exceptions which apply to approximately one-fourth of the counties in the state, I respectfully dissent.

HEFLIN, C. J., and MERRILL, J., concur.