MOORE, Chief Justice.
This case concerns the effect of Amendment No. 332, Ala. Const.1901, on Act No. 99-427, Ala. Acts 1999, which deals with the pay of judicial officers in the State of Alabama. We affirm the judgment of the trial court, but on an alternative rationale.

I. Background

Act No. 99-427, Ala. Acts 1999 (“the Act”), became law on June 10, 1999. The purpose of the Act was to create a uniform compensation system for judicial officers throughout the State. In order to fund this system, the Act increased docket fees in all civil cases. In Bibb County, the docket fees increased from $110 to $140; those fees are collected by the circuit clerk, John Stacy. Randall Holsbrooks had filed an action in the Bibb Circuit Court; the docket fee he was charged included the increase authorized by the Act. Holsbrooks then sued Stacy and State Treasurer Lucy Baxley,[1] in their official capacities, arguing that this increase was unconstitutional.
Holsbrooks sought declaratory and in-junctive relief on the grounds that the Act violated Amendment No. 332, Ala. Const. 1901 (“the Amendment”). Stacy and Bax-ley filed a motion to dismiss, which the trial court granted on November 14, 2000. Holsbrooks filed a motion to alter, amend, or vacate the judgement of dismissal and requested a hearing on his motion. The trial court denied the motion without a hearing on January 2, 2001.
The Amendment reads, in pertinent part:
“The legislature may, • from time to time, by general or local laws applicable to or operative in Bibb county and approved by a majority of the qualified electors of Bibb county at a referendum election, fix, regulate, and alter the costs and charges of court and the fees, commissions, allowances, and salaries, ... to be charged or received by ... the circuit clerk and the register....”
Both sides stipulate that no referendum election was held in Bibb County before the clerk began collecting the increased docket fees called for by the Act. Hols-brooks contends first that the trial court erred in denying the request for a hearing before ruling on his motion to alter, amend, or vacate. Second, he argues that the Act is unconstitutional because no referendum election was held in Bibb County on the fee increase and that, therefore, this Court should declare it void.

II. Analysis

A. The Motion to Alter, Amend, or Vacate

Holsbrooks cites Walls v. Bank of Prattville, 554 So.2d 381 (Ala.1989), for the proposition that “where a hearing on a [postjudgment motion] is requested pursuant to Rule 59(g)[, Ala. R. Civ. P.], the trial court errs in not granting such a hearing.” 554 So.2d at 382. In Walls, the Court ruled that the denial of the hearing constituted reversible error, and Holsbrooks believes the same result is warranted in this case. However, the Court in Walls explicitly made the question whether the denial of a postjudgment motion without a hearing constitutes reversible or harmless error dependent upon the facts of the particular case, stating, “Because we determine that there is probable merit in-the motion, *710 we hold that the error, under the circumstances of this case, does not fall within the harmless error rule. Compare Greene v. Thompson, 554 So.2d 376 (Ala.1989).” Walls, 554 So.2d at 382 (emphasis added).
In Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989), the Court stated:
“Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.”
The issues in this case involve only questions of law pertaining to statutory construction; thus, the standard of review is de novo. See Taylor v. Cox, 710 So.2d 406 (Ala.1998). Because this Court reaches the same conclusion as did the trial court, albeit by a different rationale, the trial court’s judgment is due to be affirmed. Thus, according to Greene, the trial court’s denial of a hearing on Hols-brooks’s postjudgment motion constitutes harmless error.

B. The Amendment and the Act

1. The Trial Court’s Rationale

In McGee v. Borom, 341 So.2d 141 (Ala. 1976), the Court elaborated on a principle of constitutional interpretation that plays a vital part in, our determination of this case. The Court stated:
“The [Alabama] Constitution is a document of the people. Words or terms used in that document must be given their ordinary meaning common to understanding at the time of its adoption by the people.... We are, therefore, not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution.”
341 So.2d at 143.
The trial court claimed to follow this principle, saying that “[a] plain reading of Amendment No. 332 does not require a referendum election to be held in Bibb County approving Act 99-427 as it applies to Bibb County.” We likewise follow this principle in reading the Amendment. The trial court believed no election was necessary because of the wording of the second paragraph of the Amendment. That paragraph states:
“In the event this amendment is approved and a majority of the qualified electors of said county who vote thereon vote in favor of the adoption of this amendment when it is submitted, then any law theretofore passed which places any officers in Bibb county on a salary basis, or any law fixing, regulating, and altering the costs and charges of court and the fees, commissions, allowances, and salaries of any officer in Bibb county, may become effective without any other election having been held thereon. In the event this amendment is approved and a majority of the qualified electors of said county who vote thereon vote against its approval, then such act or acts shall have no further force or effect.”
Amend. No. 332, Ala. Const.1901 (emphasis added).
The trial court reasoned that “the word ‘theretofore’[2] only relates to any law passed placing any officer in Bibb County on a salary basis. The word ‘theretofore’ does not modify the clause ‘any law fixing, regulating, and altering the costs and *711 charges of court.’ ” In other words, the trial court read the second paragraph to say that “if Amendment No. 332 was approved by a majority of the qualified electors of Bibb County then there is no requirement for a referendum approving any increase in court costs in Bibb County.”
The trial court calls this the “clear statutory construction and linguistic construction” of the Amendment. We disagree. The obvious reason the word “or” appears in the first sentence of the second paragraph is so that the word “theretofore” applies to both the phrase concerning the salary of Bibb County officers and the phrase discussing “costs and charges of court.” The “plain meaning” of the second paragraph of the Amendment is that laws concerning salaries of Bibb County officers and those concerning costs and charges of court that were passed before the Amendment was passed did not require a referendum to remain in effect.
Although we find the trial court’s reasoning unsound, its conclusion that the Amendment does not render the Act void is, nevertheless, correct. The trial court is also correct that in order to reach the proper result a careful reading of the Amendment is required.

2. The Purpose of the Amendment

The Amendment reads, in pertinent part:
“The legislature may, from time to time, by general or local laws applicable to or operative in Bibb county and approved by a majority of the qualified electors of Bibb county at a referendum election, fix, regulate, and alter the costs and charges of court and the fees, commissions, allowances, and salaries ... to be charged or received by ... the circuit clerk and the register.... ”
Holsbrooks claims that the Amendment renders the change in court costs throughout the State unconstitutional. To determine whether he is correct, we must examine the purpose of the Amendment.
Section 96, Ala. Const.1901, provides:
“The legislature shall not enact any law not applicable to all the counties in the state, regulating costs and charges of court, or fees, commissions or allowances of public officers.”
In several cases this Court has held that the original purpose of amendments such as the Amendment[3] was to exempt the counties named in those amendments from the requirements of § 96. The case containing the most thorough analysis of these amendments, House v. Cullman County, 593 So.2d 69 (1992), states:
“It is clear that this Court has often construed the language in ... amendments authorizing the legislature to ‘fix, regulate and alter the costs, charges of court, fees, commissions, allowances or salaries to be charged or received’ by various county officers broadly enough to remove the affected counties from the applicability of § 96.”
593 So.2d at 74. See also Waldrop v. Henry, 207 Ala. 128, 92 So. 425 (1922); Almon v. Morgan County, 245 Ala. 241, 16 So.2d 511 (1944).
The intended consequence of these types of amendments was to allow the Legislature to change the fees of court and the allowances of judicial officers in certain counties that desired to apply a different pay scale to their judicial officers than did the rest of the counties of the State. Originally, these amendments were adopted as part of a movement away from funding the salaries of judicial officers by fees and *712 instead placing judicial officers on salaries. “The purpose of Amendment No. 44 [one of the same type as the Amendment] was in response to a growing demand that public officers be placed upon a salary-basis and not compensated by fees.” Almon, 245 Ala. at 243, 16 So.2d at 513. But the long-term effect was that these counties were permitted to have court fees and pay rates for their judicial officers that differed from those in the rest of the State.
The purpose of the Act was to reestablish what § 96 had originally established in the Constitution: uniform regulation of costs of court, fees, and commissions or allowances of judicial officers. Thus, we have a conflict between the purpose of the Act and the types of amendment represented by the Amendment. The conflict is not a problem, however, in many of the counties to which such amendments apply because the amendments simply provide that the Legislature may fix, regulate, and alter the costs, charges of court, fees, commissions, allowances, or salaries of various judicial officers in the named county. The Amendment and a select number of others[4] differ in one crucial respect: they purport to require a referendum election in the named county, which some argue is a predicate to the passage of any law of general application concerning those issues.
Holsbrooks argues that because the Amendment contains the referendum requirement, the Act establishing uniform judicial pay cannot become effective throughout the State until a referendum election on the Act is held in Bibb County. This particular argument was first made in Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972). The appellants in that case, like Holsbrooks, argued that because Amendment No. 196[5] required any general law fixing the salary of the sheriff of St. Clair County to be approved by the voters of that county, Act No. 1170, Ala. Acts 1969, which set a standard salary for all sheriffs across Alabama, could not go into effect anywhere in the State until it was ratified by the St. Clair County electorate. The Court rejected this argument as “clearly contrary to the spirit of the amendment.” 289 Ala. at 430, 268 So.2d at 40. The Court went on to explain the meaning of Amendment No. 196:
“We conclude, therefore, that the people of the state of Alabama did not intend, when they ratified Amendment 196, that a general law, fixing sheriffs’ salaries throughout the State could not go into effect anywhere in the State until ratified by the voters of one county, St. Clair County. Rather, we are of the opinion that, in ratifying Amendment 196, it was the intention of the people simply to give the voters of Si. Clair County the option of deciding whether a general or local law fixing sheriffs’ salaries ... would be effective in their county. It seems to us that any other interpretation would result in an unworkable absurdity, totally contrary to the spirit of Amendment 196....
“... We think that even if Act No. 1170 should be rejected by the St. Clair *713 electorate, it will still stand as a general law, within the meaning of Section 110, Alabama Constitution of 1901, since it is applied to the State as a whole, with the exception of those two counties specifically deleted from the whole by constitutional amendment, i.e., Greene and St. Clair Counties.”
289 Ala. at 430, 268 So.2d at 40 (emphasis added).
The Court clearly held in Hamilton that the referendum clause cannot be construed in such a way as to forestall the application of a general law to the rest of the State, even if it delays its application in the county covered by the amendment. We agree; therefore, Holsbrooks’s argument lacks merit.
The Hamilton Court also said that an act changing the costs and charges of court or fixing the salaries of judicial officers would not take effect in St. Clair County until voted upon by the voters of that county. That part of its holding is distinguishable from this case, however, because the wording of Amendment No. 196 differed from the wording of the Amendment. Amendment No. 196 allowed the Legislature to make a change “by general or local laws, to become effective only if approved by a majority of the qualified electors of St. Clair county voting at a referendum election.” The Amendment allows the Legislature to make a change “by general or local laws applicable to or operative in Bibb county and approved by a majority of the qualified electors of Bibb county at a referendum election.” The clear import of Amendment No. 196 was that all general or local laws passed by the Legislature on this subject would “become effective” in St. Clair County “only if approved by a majority of the qualified electors in St. Clair county.”
The different wording in the Amendment suggests a different meaning. “In expounding the Constitution, it is elementary that the intention of the framers must be sought for in, and be deduced from a consideration of, every provision of the instrument having any legitimate bearing upon the question involved, giving proper effect to every word and clause.” State ex rel. Winter v. Sayre, 118 Ala. 1, 40-41, 24 So. 89, 102 (1897) (Head, J., dissenting).

8. Comparing Amendments

Because the difference in wording signals a difference in meaning, a comparison of the Amendment with other amendments of this type helps to illuminate the meaning of the Amendment. In the Court’s extensive study of these amendments in House v. Cullman County, 593 So.2d 69 (Ala.1992), it found that the clearer wording in some amendments could help to illuminate some of the more ambiguous wording found in others. See House, 593 So.2d at 75-76; see also Dunn v. Alabama State Univ. Bd. of Trustees, 628 So.2d 519, 523 (Ala.1993) (“In construing a statute, we are permitted, indeed required, to compare statutes addressing ‘related subject[s].’ In doing so, we are not ‘arbitrarily to disregard the marked differences [and similarities] in terminology’ found in such statutes.” Citing House, 593 So.2d at 75 (other citations omitted)).
Some of the amendments concerning the costs and charges of court in various counties do not contain a referendum clause. Several others do, but these clauses are worded differently. One group of amendments specifically provides for a referendum on the amendment itself, but stipulates that no other referendum is necessary if the amendment passes. An example of this group is Amendment No. *714 418,[6] which states, in pertinent part:
“The legislature may, by general or local laws, fix, alter, and regulate the costs and charges of court.... The provisions of this constitutional amendment shall not be implemented in Franklin county until implementation is approved by a vote of a majority of the qualified electors of Franklin county voting in an election called by the county governing body to determine said issue; 'provided, however, that if a majority of the qualified electors of Franklin county who participate in the election held on the adoption of this amendment vote in favor thereof, no further election need he held.”
(Emphasis added.)
The language of this referendum clause clearly dictates that once the amendment passes, any law enacted by the Legislature regarding court costs in Franklin County would not require a referendum vote before it could take effect in Franklin County. This contrasts sharply with the following language of the Amendment: “The legislature may, from time to time, by general or local laws applicable to or operative in Bibb county and approved by a majority of the qualified electors of Bibb county at a referendum election, fix, regulate, and alter the costs and charges of court....” (Emphasis added.) The contrast indicates that, even if we do not consider the second paragraph of the Amendment, the referendum clause was not referring to the vote necessary to pass the Amendment.
Another group of these amendments frames the issue of referendum votes in yet another way. Amendment No. 381, which was subsequently amended by Amendment No. 347, was indicative of this group.[7] It provided, in pertinent part:
“The legislature may from time to time, by general or local laws applicable to or operative in Cleburne county, fix, regulate, and alter the costs and charges of courts.... Provided, that no law changing the method or basis for compensating such officers shall become effective unless it is approved by a majority of the qualified electors of the county who vote at a referendum election held for such purpose.”
(Emphasis added.)
The referendum clause in Amendment No. 331 unequivocally dictated that “no law” passed by the Legislature on this subject, applicable to Cleburne County, “shall become effective” unless approved in a referendum vote by the people of Cleburne County. In other words, the language comports with what the Court construed the referendum clause in Amendment No. 196 to mean in Hamilton.
This reading of Amendment No. 331’s referendum language makes even more sense in light of the fact that Amendment No. 331 was amended by Amendment No. 347 three years after it was ratified. The only change made by the Legislature was to delete from Amendment No. 331 the sentence beginning “Provided, that no law changing the method or basis for compensating such officers.... ” In other words, the Legislature could now pass general or local laws fixing, regulating, or altering the costs or charges of court in Cleburne County without a referendum to carry-such laws into effect. This change indicates that the referendum clause meant *715 what it said, and to avoid having a referendum vote, the Legislature needed to amend Amendment No. 331 to delete the clause.
A Interpreting the Amendment
Because the Act was designed to provide uniform pay for judicial officers throughout the State, if the meaning of the Amendment is identical to that of Amendments No. 196 and No. 331, both of which have been repealed to delete the referendum language, then the Amendment thwarts the Act’s intended purpose. “This Court, when confronted with a choice between two possible constructions of a constitutional provision, one that would forbid the legislature to act and one that would permit the legislature to act, it is not free to choose the construction that would restrict the legislature’s power.” House, 593 So.2d at 80 (emphasis added.) The most reasonable reading of the Amendment allows the Act to achieve its goal — uniformity in state judicial pay — without the need for a referendum vote in Bibb County before it takes effect.
In Birmingham Electric Co. v. Harry, 215 Ala. 458, 111 So. 41 (1926), the Court discussed the meaning of Amendment No. 2, the amendment on which all of the amendments designed to carve out exceptions to § 96 of the Alabama Constitution were patterned.[8] In passing, the Court stated, “We venture the opinion that the reference to general laws, construed in connection with the rest of the Constitution, means that the Legislature may reestablish a uniformity once broken or in the matter of charges, etc., hereafter provided for....” Harry, 215 Ala. at 459, 111 So. at 42. Applying this reasoning to the Amendment, it follows that the reason the Amendment states that “[t]he legislature may, from time to time, by general or local laws ... fix, regulate, and alter the costs and charges of court” is that this wording gives the Legislature the opportunity to reestablish the uniformity mandated by § 96, if it chooses, by a general act. (Emphasis added.).
Of course, unlike Amendment No. 2, the Amendment contains a referendum clause immediately after its reference to “general or local laws,” but a close reading of the rest of that sentence indicates that the referendum clause does not apply to general laws. The first sentence reads in pertinent part: “The legislature may, from time to time, by general or local laws applicable to or operative in Bibb county and approved by the majority of the qualified electors in Bibb county at a referendum election, fix, regulate, and alter the costs and charges of court....” (Emphasis added.) As a general rule, modifiers should follow as closely as possible the words they modify.[9] Invoking this general rule, we conclude that the phrase “applicable to or operative in Bibb county” modifies the term “local laws.” The phrase “approved by the majority of the qualified electors in Bibb county at a referendum election” likewise modifies the term “local .laws” because the conjunction “and” connects the two modifying phrases. These phrases, however, do not also modify the term “general [laws]” because of the presence of the disjunctive conjunction “or.” The conjunction “or” separates the word *716 “general” from the phrases that follow, until the verb (“fix”) is reached in the sentence.
The result is that the referendum clause in the Amendment applies to local laws, not to general laws. This interpretation makes sense when the Amendment is compared with Amendment No. 196, in which the referendum clause is set off by commas so that it applies to both general and local laws. The referendum clause in the Amendment follows on the heels of the term “local laws” with no punctuation separating the two, indicating that the referendum clause applies only to local laws.
If the conjunctive “and” had been used between the words “general” and “local,” then the referendum language that follows might be construed to apply to general laws as well, but that conjunctive is absent, and we will not read the sentence as though it were there. As the Court observed in Ex parte Uniroyal Tire Co., 779 So.2d 227, 234 (Ala.2000),
“We recognize the fact that ‘the legislature’s use of the disjunctive conjunction “or,” as opposed to the conjunctive conjunction “and,” is not conclusive with respect to the legislature’s intent,’ and that ‘this Court is at liberty in ascertaining the intent of the legislature to construe the disjunctive conjunction “or” and the conjunctive conjunction “and” interchangeably.’ Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992) (emphasis added). However, ‘[wjhile there may be circumstances which call for an interpretation of the words “and” and “or,” ordinarily these words are not interchangeable.’ 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 (5th ed.1993) (emphasis added). ‘The literal meaning of these terms should be followed unless it renders the statute inoperable or the meaning becomes questionable.’ Id. at 26 (Supp. 2000) (emphasis added). See also Kear-ney v. Ahmann, 264 N.W.2d 768, 769 (Iowa 1978) (‘When the word “or” is used it is presumed to be disjunctive unless a contrary legislative intent appears.’); Boron Oil Co. v. Cathedral Found., Inc., 434 S.W.2d 640, 641 (Ky. 1968) (court should not interchange ‘or’ with ‘and,’ unless it is ‘obvious that the intent of the legislature would be thwarted if the change were not made’). To substitute by judicial construction the word ‘or’ for the word ‘and’ would significantly impact the scope of this statute.”
Breaking down the sentence in the Amendment to its elements renders a reading of that Amendment exactly as the Harry Court speculated, i.e., the term “general [laws]” is present in the Amendment to acknowledge the Legislature’s standing power to enact a uniform scheme for judicial pay and court costs when it desires to do so, notwithstanding the Amendment. This is a logical reading with regard to the Legislature’s intent in enacting both the Act and' Act No. 557, Ala. Acts 1973, which proposed the Amendment.
Thus, we find that the Amendment does not require a referendum vote on the Act, a general law, before the law can take effect throughout the State and in Bibb County. This Court “will affirm a trial court’s judgment or order of dismissal if it is correct, even if the court has given a wrong reason in support of that judgment or order,” Cutler v. Orkin Exterminating Co., 770 So.2d 67, 71 (Ala.2000), and we do so here.
AFFIRMED.
STUART, J., concurs.
*717 HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur in the result.

. Baxley, as state treasurer, oversees the State’s general fund, into which the court charges at issue here are deposited.

2. The word “theretofore” is defined by Merriam Webster's Collegiate Dictionary (10th ed.1999), as meaning "up to that time.”

. There are 45 such amendments to the Alabama Constitution.

. Amendments No. 196 (repealed), No. 331 (amended by Amendment No. 347), No. 344 (Blount County), and No. 353 (Barber County) are among the other amendments that contain, or contained, the referendum requirement.

. Amendment No. 196 was repealed in 1982 by Amendment No. 422. When Hamilton was decided, Amendment No. 196 read, in pertinent part:
"The legislature may, from time to time, by general or local laws, to become effective only if approved by a majority of the qualified electors of St. Clair county voting at a referendum election ... fix, alter, and regulate the costs and charges of courts in St. Clair county....”

. Amendments No. 412 and No. 434 have identical referendum-clause language.

. Amendments No. 249, No. 297, No. 349, No. 362, and No. 367 contain referendum language identical to that of Amendment No. 331.

. Amendment No. 2 states:
"The legislature of Alabama may hereafter, from time to time, by general or local laws, fix, regulate and alter the costs, charges of courts, fees, commissions, allowances or salaries to be charged or received by any county officer of Jefferson county, including the method and basis of their compensation.”

. William E. Strunk, Jr. & E.B. White, The Elements of Style 30 (3d ed.1979).