HARWOOD, Justice.
Rosemary Trawick, an employee of the Dallas County Department of Human Resources (“DHR”), a designated agent of the Alabama Department of Human Resources (“ALDHR”), petitions for a writ of mandamus directing the Dallas Circuit Court to vacate its order denying her motion for a summary judgment based on State-agent immunity and to grant that motion. We grant the petition in part, deny the petition in part, and issue the writ.

Facts and Procedural History

At all times pertinent to this appeal, Trawick was a social worker employed by DHR. Trawick’s employment with DHR largely consisted of functions relating to *54 the licensing of child day-care and nighttime-care centers.
In late 1999, James Anderson and Emma Anderson applied for a license to operate a family day-care facility for children. Trawick was assigned the task of performing the investigation necessary to determine the Andersons’ eligibility for such a license and to award them the requested license, if appropriate. On January 1, 2000, DHR issued to the Andersons the requested license. The Andersons then commenced operation of Miss Emma’s Day Care Home (“Miss Emma’s”). Miss Emma’s license was renewed in 2002.
At some point before June 2000, Fred V. and Rhonda V. began gathering information on day-care centers, including Miss Emma’s. During this period, Rhonda contacted both the Selma Police Department and DHR in an attempt to determine whether any complaints had been filed or allegations leveled against Miss Emma’s. When Rhonda contacted DHR, she spoke with Trawick.[1] Rhonda asked Trawick whether Miss Emma’s was a licensed facility and whether anyone had complained to DHR about any employees of Miss Emma’s. Trawick responded that Miss Emma’s was a licensed facility; she additionally stated that no one had filed any complaint against Miss Emma’s and that no employees of Miss Emma’s had ever been accused of anything improper. In fact, Trawick stated that the employees at Miss Emma’s were “great people” and “never [had] been accused of anything.” In reliance upon Trawick’s representation, Fred and Rhonda enrolled their two children in Miss Emma’s.
Fred and Rhonda allege that, in contradiction to Trawick’s representation, Traw-ick knew of a complaint that had been filed against James Anderson. Specifically, Fred and Rhonda allege that before Rhonda’s telephone inquiry, Mary B., the grandmother of a child enrolled at Miss Emma’s, had filed a complaint with DHR accusing James Anderson of having molested her granddaughter. Fred and Rhonda learned this information in 2002, after James Anderson was arrested and charged with not only sexually abusing one of their children, but also with sexually abusing Mary B.’s granddaughter.
On December 31, 2003, Fred and Rhonda sued numerous parties, including Traw-ick in both her individual and official capacities. Their complaint alleged, among other things, that Trawick negligently and/or wantonly failed to advise or warn them about the complaint alleging that James Anderson had sexually abused a child enrolled at Miss Emma’s, that Traw-ick failed to maintain a complaint file and/or a report of the alleged abuse, that Trawick failed to properly investigate the employees of Miss Emma’s, and that Trawick had negligently licensed and/or renewed the license for Miss Emma’s.
Trawick filed a motion for a summary judgment, arguing that she was immune from suit under the doctrine of State-agent immunity. The trial court denied Traw-ick’s motion on February 2, 2006. Trawick has timely petitioned this Court for a writ of mandamus. Trawick has failed to in- *55 elude among the attachments to her petition the summary-judgment motion she filed with the trial court. The Alabama Rules of Appellate Procedure require the attachment of “parts of the record that would be essential to an understanding of the matters set forth in the petition.” Rule 21(a)(1)(E), Ala. R.App. P. From the answer and briefs filed "with this Court, however, it is clear that Trawick has preserved for our review her immunity argument. Because of the clarity of the issue before us, we do not consider Trawick’s omission from her petition of a copy of her summary-judgment motion to be fatal to her petition.

Standard of Review

“ ‘ “While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.” Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000). A writ of mandamus is an extraordinary remedy available only when there is: “(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.” Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).’
“Ex parte Nall, 879 So.2d 541, 543 (Ala.2003).
“This Court has established a ‘burden-shifting’ process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show, that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). ‘A State agent acts beyond authority and is therefore not immune when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.” ’ Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).”
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006).

Analysis

Trawick argues that she was immune from suit in both her official and individual capacities. The complaint alleges that Trawick is liable “individually and as an employee of Dallas County Department of Human Resources ” (emphasis added), and proceeds to demand monetary compensation. With respect to the claims against Trawick in her official capacity, she is clearly correct. As we made clear in Ex parte Butts, 775 So.2d 173, 177 (Ala.2000), “[a] complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901. Ex parte Alabama Dep’t of Forensic Sciences, 709 So.2d [455,] 457 [ (Ala.1997) ].” Moreover, “a county department of human resources is considered to be a State agency for purposes of asserting the defense of sovereign immunity.” Ex parte Franklin County Dep’t of Human Res., 674 So.2d 1277, 1279 (Ala. *56 1996) (citing Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992)). Thus, to the extent the trial court denied Trawick’s summary-judgment motion as it pertained to her liability in her official capacity, we grant Trawick’s petition and issue a writ of mandamus directing the trial court to vacate its order and enter a summary judgment for Trawick on the claims asserted against her in her official capacity.
We next examine Trawick’s argument that she is entitled to immunity in her individual capacity because her alleged conduct fits within one of the categories of conduct protected under Ex parte Cranman, 792 So.2d 392 (Ala.2000),[2] in which this Court explained, in pertinent part:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner....”
792 So.2d at 405.
In her motion for a summary judgment, Trawick bore the burden of presenting the trial court with evidence indicating that her actions, and, if relevant, the manner in which she undertook those actions, represented a discharge of duties of the type included in Cranman category (3). If Trawick demonstrated that to be the case, she met her burden, and the burden then shifted to Fred and Rhonda to present substantial evidence indicating that there were circumstances, of the type also described in Cranman, which served to preclude such immunity.
In her petition, Trawick attempts to demonstrate that each aspect of her “conduct made the basis of the claim” was undertaken in fulfillment of a duty imposed by law. She first notes the allegation that she failed to properly license, investigate, and monitor Miss Emma’s. Although Trawick acknowledges that this is one of the claims in the complaint and proceeds to offer a thorough history of exactly what she did in that connection, at no point does she actually argue that she was required by law to engage in or to refrain from certain actions. To the extent the trial court denied Trawick’s summary-judgment motion with respect to this allegation, we cannot hold that the trial court erred.
At no point in her petition does Trawick even acknowledge the allegation that she failed to maintain a complaint file and/or a report of the alleged abuse by James Anderson of Mary B.’s granddaughter. It goes without saying that she does not defend her conduct in that regard as having been required by law. Again, then, we cannot hold that the trial court erred in denying Trawick’s summary-judgment motion as to this allegation.
Trawick does raise, and devotes the overwhelming majority of her brief to, the claim that she negligently or wantonly failed to advise or warn Rhonda about any complaints accusing James Anderson of sexual abuse of a child enrolled at Miss Emma’s. The conduct alleged to form the basis for this claim is that when Trawick received Rhonda’s telephone call asking whether any complaints had been filed against Miss Emma’s, Trawick told Rhonda that there were no complaints against *57 Miss Emma’s at that time, despite the fact that a complaint indeed had been filed against Miss Emma’s. . In her petition, Trawick argues only that she is entitled to State-agent immunity under category (3) of the Cranman test.
The central focus of the dispute between the parties concerns Ala.Code 1975, § 26-14-8. That statute provides a list of entities to which child-abuse-and-negleet records may be made available. Section 26-14-8 provides, in pertinent part:
“(c) The Department of Human Resources shall establish and enforce reasonable rules and regulations governing the custody, use and preservation of the reports and records of child abuse and neglect. Child abuse and neglect reports and records shall be limited to the purposes for which they are furnished and by the provisions of law under which they may be furnished. The reports and records of child abuse and neglect and related information or testimony shall be confidential, and shall not be used or disclosed for any purposes other than:
“(1) To permit their use to prevent or to discover abuse or neglect of children through the information contained therein.... ”
Trawick argues that this statute imposed on her a duty to keep confidential any information regarding the complaint made against James Anderson. Fred and Rhonda assert, however, that in Trawick’s summary-judgment motion — which, as noted above, has not been included by either party in attachments reviewable by this Court — she conceded that under the statute she was “permitted” to release the information because her disclosure to Rhonda could potentially “prevent ... abuse or neglect of children.” Regardless of whether Trawick did so in her summary-judgment motion, she has clearly conceded in her reply brief to this Court that § 26 — 14—8(c)(1) is “clearly permissive.” (Trawick’s reply brief, at 10.)
Trawick’s burden under Cranman is to make a prima facie showing that her actions were dictated by a duty imposed by statute, rule, or regulation. By conceding that she was “permitted” to disclose this information under the circumstances of this case, however, Trawick has conceded that under § 26-14-8 she was under no “duty” to keep confidential the information regarding the complaint against James Anderson.
Trawick also argues that Ala.Code 1975, § 38-7-13, requires that “[r]ecords regarding children and facts learned about children and their relatives shall be kept confidential by the child-care facility and by the department.” The basis of Fred and Rhonda’s claims, however, is not that Trawick refused to reveal information about a child or his family; rather, she is faulted for allegedly misrepresenting the safety of a child-care facility. This statute, then, imposed no duty to which Trawick was adhering in making her alleged representations to Rhonda.
Section 38-7-13 does, however, along with § 26-14-8, authorize ALDHR to promulgate rules and regulations governing the use and disclosure of certain information related to children and the child-care facilities they attend. Pursuant to that authority, ALDHR has implemented rules governing confidential materials. See Ala. Admin. Code (Department of Human Resources), Regulation 660-1-6. Trawick argues that Regulation 660-1-6-.07(7) “restrict[s] publicly available information on complaints against child care facilities to ‘founded’ or ‘indicated’ complaint determinations.” (Petition, at 14.) That regulation provides, in pertinent part:
*58 “Upon the request of any adult, non-confidential information, including ... founded/indicated complaints of violations of the Code of Ala.1975, Title 38, Chapter 7, Minimum Standards, or Administrative Rules of this Department by individual ... non-exempt child care facilities ... located in a particular ... county may be disclosed or released. Except for official determinations relating to character and suitability to be involved in child care, information relating to the character and good name of any particular unlicensed or non-exempt person, group of persons, agency, association, or organization shall not be disclosed or released. Child abuse or neglect complaints and records shall not be disclosed or released except as provided for in Rule 660-1-6-.05. Names and facts learned about children and their families shall remain confidential.... Founded/indicated child care license complaint information includes only:
“(a) Child Care Minimum Standards violations] actually observed by the licensing consultant or other DHR personnel;
“(b) Child Care Minimum Standards violations admitted to by facility personnel;
“(c) Child Care Minimum Standards violations determined by an administrative or court decision.”
Trawick’s argument misapprehends the regulation. Although the regulation does allow the disclosure of “founded” and “indicated” complaint information, it does not authorize this disclosure as an exception to a general rule of confidentiality. Rather, the regulation avoids defining information as confidential or noneonfidential, stating only that certain noneonfidential information may be disclosed. Thus the regulation cited by Trawick fails to support her argument that she was prohibited from releasing information about James Anderson to Rhonda.
Finally, Trawick cites in support of her argument Ala. Admin. Code (Department of Human Resources), Regulation 660-1-6-.05, which governs child-abuse-and-neglect records. That regulation provides, in pertinent part:
“Child Abuse and Neglect (CA/N) records and other confidential information shall be disclosed and released without a subpoena to:
“(a) persons in a position to help or assist in the prevention or discovery of abuse or neglect of children through the information contained therein.... ”
The regulation continues with a list of eight additional categories of entities to which child-abuse-and-neglect records may be disclosed. Although Trawick correctly notes that “the list does not include parents seeking information on a DHR-licensed child care facility,” that list does include “persons in a position to help or assist in the prevention ... of abuse or neglect of children.” Given Trawick’s earlier concession that she was permitted to release information “to prevent ... abuse ... of children,” she can hardly argue that she was prohibited from releasing that information to “persons in a position” to do just that.
Because Trawick has failed to cite to this Court any statute, rule, or regulation that she contends imposes upon her a duty to keep confidential any information she may have learned about James Anderson’s improprieties with children at Miss Emma’s, she has necessarily failed to meet her initial burden of demonstrating that her conduct falls within a category of conduct that is protected under Cranman.
Moreover, although Trawick’s argument presupposes that she could withhold with *59 impunity information concerning the complaint lodged against James Anderson, that is not the scenario presented by the materials accompanying the parties’ submissions to this Court. Rather, we must accept as true for purposes of this review that Trawiek undertook to disclose to Rhonda the presence or absence of child-abuse-and-neglect reports relating to Miss Emma’s and incorrectly advised her that no such reports were of record or known to Trawiek. Thus, Trawiek voluntarily bypassed any confidentiality of records and information she might otherwise have been entitled to maintain. We therefore conclude that Trawiek has failed to demonstrate a clear legal right for which a writ of mandamus should issue, and we deny the petition as to the issue of Trawick’s claim of State-agent immunity for actions taken in her individual capacity.
Trawiek finally argues that Fred and Rhonda’s claims are barred by the statute of limitations. In their answer, however, Fred and Rhonda note that “this argument was not made by [Trawiek] to the trial court and is therefore not properly before this appellate court.” (Answer, at 16.) Trawiek tacitly admits as much, responding to that assertion in her reply brief only by saying that she “did raise the statute of limitations in her Mandamus Petition.” (Emphasis added.) (Trawick’s reply brief, at 16.) Because it is undisputed that Trawiek failed to raise this argument in her summary-judgment motion, we cannot hold, on the basis of the statute of limitations, that the trial court erred by denying that motion.

Conclusion

We grant the petition for the writ of mandamus with respect to Trawick’s claim of State-agent immunity in her official capacity. We deny the petition with respect to Trawick’s claim of State-agent immunity in her individual capacity and to her statute-of-limitations argument.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., and LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
SEE and SMITH, JJ., concur in the rationale in part and concur in the result.

. Before the trial court, Trawick denied that she was contacted by Rhonda or that she spoke to her with regard to Miss Emma’s. For purposes of her petition to this Court, Trawick has accepted as true Fred and Rhonda’s allegations. Even were Trawick to have contested those allegations, however, this Court’s standard of review for a summary judgment, even when reviewed on a mandamus petition, is to view the facts in the light most favorable to the nonmovant. Ex parte Sawyer, 876 So.2d 433, 439 (Ala.2003); Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000).

. Cranman was a plurality decision. We subsequently adopted the test set forth in Cran-man by a majority vote in Ex parte Butts, supra.